STATE of Missouri, Respondent,

v.

Wilbur LEWIS, Jr., Appellant.

No. WD 31885.

Missouri Court of Appeals,
Western District.

March 2, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 4, 1982.

Application to Transfer Denied June 14, 1982.

James W. Fletcher, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before SOMERVILLE, C. J., and SHANGLER, PRITCHARD, WASSERSTROM, TURNAGE, CLARK and KENNEDY, JJ.

SHANGLER, Judge.

The defendant Lewis was convicted on separate counts of robbery second degree [§ 569.030, RSMo 1978], stealing [§ 570.030] and burglary first degree [§ 569.160]. The defendant was charged as a dangerous felon [under § 558.016] in each count. The jury returned sentences of ten years for robbery, five years for stealing and ten years for burglary. The court ordered that the multiple sentences run consecutively. The court, after evidence, expressly determined that the twenty-five year sentences returned by the jury were a sufficient punishment, and so withheld exercise of the power to enhance punishment against the defendant as a dangerous offender under § 558.016.1.

## PART I

■ The defendant contends, first, that the trial was made unfair by the requirement to wear a green shirt with *County Jail, Co. Jail,* or a like legend, on the back. He contends that this apparel with the jailhouse mark infringed the presumption of innocence due the defendant on a criminal trial. No doubt, to compel an accused to display himself to the jury in attire readily identified as prison dress, disparages the presumption of innocence and impairs a fair trial. *Estelle v. Williams,* 425 U.S. 501, 504, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976). The record shows no compulsion of dress, and so no infringement of right.

■ The complaint relates to the second day of the proceedings. The first day was taken with voir dire. The evidence does not show what the defendant wore that first day, but the colloquy on the post-trial motion intimates that it was personal apparel. Nor does the record suggest why that dress was no longer suitable on the successive day. From what appears, the defendant was presented for trial on that second day clothed in black trousers and suede shoes— both personal accoutrements—but in a green blouse furnished by the jailer. The court noted in comment:

COURT: Now, we were apparently not successful in getting a shirt for Mr. Lewis, although I understand that they had some up there that weren't in too bad a shape. The guard told me over the phone that they had a gold one that wasn't in too bad a shape.

DEFENDANT: Your Honor, the shirts are all wrinkled up.

COURT: They are what?

DEFENDANT: All wrinkled up

\* \* \* \* \* \*

COURT: Turn around. It [the green blouse] does have County Jail on it. Why don't you keep your back to the seat there. It doesn't have anything on the front that would necessarily indicate the jail. I understand your brother will be down at noon.

DEFENDANT: Yes, with a pair of pants and shirt.

COURT: All right. Okay, go ahead, bring the jury down and we'll get started.

A family member brought a change of shirt for the defendant during the noon recess and the trial proceeded without any report of an undue juror notice of the jail mark on the garment.

The defendant argues on the motion for new trial that on that second day of the proceedings, as he bent to consult with counsel, he noticed a male juror "looking at my shirt." The recollection of the court was to the contrary. The transcript does not contain a report of that incident to the court nor that any objection was lodged. The complaint that the defendant was put to an unfair choice between dirty mufti or tidy jail dress—that the one presented the defendant as a person of slovenly habits and the other as a person unduly suspect of the crime—does not rest on fact. The jail guard reported to the court that a clean shirt was available but that the defendant refused the garment. In open court, before the jury convened on the second day, the defendant explained the rejection: the shirt was "all wrinkled up." The choice of the prison dress instead was free, not compelled. A constitutional infringement is not shown; the complaint is denied. *State v. Crump*, 589 S.W.2d 328, 329 (Mo.App.1979).

The defendant contends also that robbery second degree encompasses stealing, so that the separate sentences for the convictions of those offenses—proven by the same conduct—constituted unlawful multiple punishments[1] in violation of the intendment of

the criminal code. The prosecution responds that the robbery and stealing were distinct criminal events separated, perpetrated and separately proved, so that the several consecutive punishments do not offend constitutional principle. Inquiry into the lawfulness of multiple convictions [and hence, punishments] begins, not with a constitutional decision, but with the intendment of the statutes—where such an analysis suffices for the purpose. *Busic v. United States*, 446 U.S. 398, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980); *State v. Olds*, 603 S.W.2d 501, 510 (Mo. banc 1980).

■ Our statutes enact a scheme to limit conviction for multiple offenses within this prescription:

§ 556.041

When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense, if

(1) One offense is included in the other, as defined in section 556.046; ....

\* \* \* \* \* \*

§ 556.046

1. A defendant may be convicted of an offense included in an offense charged in the indictment or information. An offense is so included when

(1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; ...

\* \* \* \* \* \*

2. The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis

---

**1.** The defendant poses the right to relief on the statutory policy against *multiple punishments* for the inclusive offense as well as the included offense from the same criminal conduct. He expressly disavows any constitutional relief. The statutory limitation, however, is against *multiple convictions*, not *multiple punishments.* §§ 556.041 and 556.046. The interdiction against *multiple punishments* [as the prosecution argument surmises] is a constitutional [double jeopardy], not statutory, principle. See, e.g.: *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980);

*North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Sours v. State*, 603 S.W.2d 592 (Mo. banc 1980). The defendant intermingles the concepts. That the distinction has functional consequences in the practice and procedure of a criminal trial is made evident in *State ex rel. Westfall v. Ruddy*, 621 S.W.2d 42 (Mo. banc 1981). We assume the defendant means to keep intact the statutory, to the exclusion of the constitutional, contention as he insists—so we interpolate *multiple punishments* into *multiple convictions.*

for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

Thus, as a matter of statutory policy, the state authority may prosecute and convict a person for multiple offenses from the same conduct, except that a conviction may not be returned on both an inclusive offense and the included offense, but only on either. Comments, The Missouri Criminal Code: A Manual for Court Related Personnel § 1.9 (1978).

The defendant was prosecuted and convicted under Count II for robbery second degree and under Count III for stealing from the same victim. The defendant agrees that both prosecutions and convictions were established by the same conduct. He contends that by the plain definition of § 556.046, stealing is an offense included within robbery second degree, and by the plain prescription of § 556.041, a defendant may not be convicted of more than one offense. Thus, he argues, the court was without authority under these statutes to convict [and then to punish] for stealing in addition to robbery second degree.

■ The code definition of included offense enacts, in paraphrase, the *Blockburger*[2] test that where the same conduct constitutes a violation of two distinct statutory provisions, "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not,"— if so, there is no identity of offense. *State v. McCrary*, 621 S.W.2d 266 (Mo. banc 1981);

*State v. Chambers*, 524 S.W.2d 826, 829[1, 2] (Mo. banc 1975). The criminal code defines robbery second degree [§ 569.030] as the *forcible stealing* of property. The criminal code defines stealing [§ 570.030] as the appropriation of the property or services of another without consent of the other or by means of deceit or coercion. The term *forcible stealing* is further defined [§ 569.-010(1)] as the use or threat of immediate physical force upon the other to [among other purposes] overcome resistance to the caption of the property or to compel the owner to deliver up the property. Thus, robbery second degree is a composite of two elements: *stealing and* the use of *force*, actual or threatened. As such robbery second degree subsumes all of the elements of stealing so that proof of robbery second degree necessarily proves a stealing. In terms of § 556.046.1(1) [and the essential *Blockburger*], "[stealing] is established by proof of the same or less than all of the facts required to establish the commission of [robbery second degree]" and so is an included offense of robbery.[3] The *Blockburger* rule rests on the assumption that a legislature usually does not intend to punish the same offense under two different statutes. "Accordingly, where two statutory provisions prescribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent." *Whalen v. United States*, 445 U.S. 684[8, 9], 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). We conclude that the criminal code demonstrably does not intend to allow a court to

2. *Blockburger v. United States*, 284 U.S. 299, l.c. 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The code § 556.046 [as we note] only paraphrases *Blockburger* to define—for purposes of multiple convictions [and punishments]— whether the activity results in more than one offense. *Blockburger* adopts a *same transaction* rationale for that determination; Missouri follows a *separate or several offense rule.* *Sours v. State*, 593 S.W.2d 208, 209 (Mo. banc 1980). The enactment of the essential *Blockburger* aphorism, however, does not promulgate the *same or single transaction* theory. See *State v. McCrary*, 621 S.W.2d 266 (Mo. banc 1981).

3. The New Missouri Criminal Code: A Manual for Court Related Personnel § 14.3: Robbery in the Second Degree—Included and Related Offenses, p. 14–4:

An essential element of Robbery in both the first and second degree is that the individual must forcibly *steal* . . . In other words, if the defendant or an accomplice was not engaged in stealing, he is not guilty of robbery. All elements of stealing must be proven, and defenses to stealing, such as claim of right (§ 570.070) will also be a defense to a robbery charge. *Since stealing is an included offense,* [emphasis ours] a jury instruction on stealing should be given if the jury could find that stealing occurred but that it was not "*forcible* " stealing.

convict [and then punish] a defendant for both robbery second degree and for stealing when the offenses are proved by the same conduct. The convictions on both Count II and Count III are, therefore, multifarious and contrary to the intendments of §§ 556.-041 and 556.046.

To avoid infringement of the clear statutory purpose against multiple convictions on both the inclusive offense and the included offense, MAI–CR 2d has formulated model instruction 2.05 *Lesser Graded or Included Offenses* which allows rendition of only one guilty verdict whatever the multiplicity of submissions. A defendant may not insist on a jury charge as to an included offense, nor does the court have obligation, "unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." § 556.046.2. In terms of the offenses prosecuted: robbery second degree and stealing —§ 556.046.2 obligates a court to instruct on the lesser offense [stealing] "if the jury could find that stealing occurred but that it was not 'forcible' stealing." The New Missouri Criminal Code: A Manual for Court Related Personnel § 14.3 (1978). That condition for submission is met when there is substantial evidence, from any source, that the caption of the property was accomplished without a use or threat of force. *State v. Scruggs*, 598 S.W.2d 501, 503[3] (Mo.App.1980); *State v. Adams*, 406 S.W.2d 608, 610[1] (Mo.1966). That condition for submission is met also where an element of the greater offense fails of proof beyond a reasonable doubt. *State v. Neighbors*, 613 S.W.2d 143, 147[4–6] (Mo.App.1980); *State v. Gregory*, 339 Mo. 133, 96 S.W.2d 47, 52[5, 6] (1936).

The evidence was that the victim and her child were abed that evening, asleep. She was awakened by the consciousness of a presence in the room, and looked up to see the muzzle of a handgun inches away held by the defendant Lewis. In the bedroom also was the henchman of the defendant with a shotgun. The defendant instructed the victim to cooperate or else he would "cut up" the child. He bound the victim, arms and legs, and the two intruders alternately guarded her and ransacked the house. They had made entry illicitly through a window. While in the house, the men pilfered some piggy banks and a fish bowl with money, a television set and other items of property. They asked her about her husband and when he was expected back from work; and they hurried to leave. They asked for the car keys. She directed them to the mantle, but they were not there, so they snatched her head by the hair and threatened to hurt her and the child unless she disclosed the location of the keys. They found the keys, asked her which one started the car, and made off with a Ford Torino. The victim was bound throughout the episode. That was the full evidence on these events. Count II charged the second degree robbery of the various personal property appropriated from the residence interior. Count III charged the stealing of the automobile. There was neither failure of proof of any of the elements of robbery second degree nor any basis in the evidence to raise an issue that the caption of the property was accomplished without force. Count III was not submissible and the conviction for stealing must be set aside.

The prosecution contends that the criminal code limitation against multiple convictions does not appertain to this evidence because the robbery was complete when the culprits finished the ransack. The theft of the keys and the car was the manifestation of a successive, separate and specific intent to steal as a means for escape. Thus, the stealing of the Torino was a caption of property distinct from the rummaged items [and, presumably, not a consequence of any force—although the victim remained bound and the culprits continued to threaten with weapons], and so the conviction on Count III was valid.

The criminal code intends that the theft of several articles of property stolen as part of a single scheme or course of conduct shall not constitute several offenses of stealing. In the terms of § 570.050:

Amounts stolen pursuant to one scheme or course of conduct, whether from the same or several owners and whether at the same or different times, *constitute a single criminal episode* and may be aggregated in determining the grade of the offense. [emphasis added]

See Comment to 1973 Proposed Code, § 570.050. The code section enlarges prior rule [*State v. Cody*, 525 S.W.2d 333, 335 (Mo. banc 1975), a restatement from *State v. Wagner*, 118 Mo. 626, 24 S.W. 219 (1893)]:

If the articles mentioned in the indictment were all taken at the same time and place, and from the same person, such taking would amount to but one larceny, and consequently all of the articles alleged to have been stolen should have been inserted in one count, and their taking charged as one offense.

The banks and interior accoutrements of the residence, as well as the automobile, were taken "at the same time and place, and from the same person," and so, within the principle of *Cody* and *Wagner* [and certainly, of § 570.050] were incidents of one stealing—*all of which* were wrested by the use of both actual and threat of force. The evidence does not show a stealing separate and other than a stealing by force—that is, by a robbery second degree. Count III was not proved for separate submission.

The numerous citations by the prosecution on that point are not relevant. *State v. Richardson*, 460 S.W.2d 537 (Mo.1970), posits—as a theoretical proposition—the validity of separate convictions for robbery and assault where the latter occurs after the former is completed. *State v. Collett*, 526 S.W.2d 920 (Mo.App.1975) and *State v. Ross*, 523 S.W.2d 841 (Mo.App.1975), allow separate convictions for the robbery and subsequent assault, after completion of the robbery. They present different circumstances and different principles. The scheme of theft did not run its course—either under *Cody* or the more expansive code § 570.050—until after the appropriation of the Torino. The contention is denied. Count III is reversed and vacated.

## PART II

The question remains as to the dispositions of Count I and Count II.

The prosecution argues, alternatively, that since the court withheld discretion to enhance the punishment of the defendant as a dangerous offender, but imposed the multiple sentences for a total of twenty-five years returned by the jury [and directed by the court to run consecutively] as sufficient and condign, should we find—as we do—that the conviction on Count III was invalid, the sentences on Count I [burglary] and Count II [robbery second degree] should be vacated and the causes remanded for resentences by the exercise of the dangerous offender jurisdiction of the trial court.

The information charged the defendant Lewis in each separate count as a dangerous offender. The proof of the allegation allows a court to extend the punishment returned by a jury upon conviction of a class B, C or D felony.[4] Count I for burglary first degree charged a class B felony punishable by a term not to exceed fifteen years. Count II for robbery second degree charged a class B felony punishable by a term not to exceed fifteen years. Count III for stealing a motor vehicle charged a class C felony punishable by a term not to exceed seven years. The proof of *dangerous offender* under a class B felony count allows a court to extend the punishment to a term not to exceed thirty years, and under a class

---

4. Section 558.016. Extended terms for dangerous offenders.—

1. The court may sentence a person who has pleaded guilty to or has been found guilty of a class B, C, or D felony to an extended term of imprisonment if it finds the defendant is a persistent offender or a dangerous offender.

    \*    \*    \*    \*   .\*    \*

3. A "dangerous offender" is one who:

(1) Is being sentenced for a felony during the commission of which he knowingly murdered or endangered or threatened the life of another person or knowingly inflicted or attempted or threatened to inflict serious physical injury on another person; and

(2) Has been previously convicted of a class A or B felony or of a dangerous felony.

C felony count to a term not to exceed fifteen years. Those were the sentence prerogatives open to the court upon proof of the dangerous offender charges. [§ 558.016.3] The jury returned conviction on each count and assessed punishment on Count I [burglary first degree] at ten years, on Count II [robbery second degree] at ten years, on Count III [stealing] at five years. The post-trial motions were denied and the court undertook to adjudicate the *dangerous offender* components of the information. The prior conviction of the defendant for assault with intent to rape with malice was established, the court was recalled to the trial evidence that the defendant threatened serious injury and endangered the victim and child in the course of the burglary, robbery and stealing [the two proofs essential to *dangerous offender* determination under § 558.016.3], and the pre-sentence investigation report was delved and questioned. After some days of advisement, the court expressly adjudged that the extended term punishment of § 558.016 was proved on all three counts, nevertheless imposed sentences according to the verdicts of the jury, but as consecutive terms:

> It is the Court's position that the sentences may be run concurrently or consecutively, and it is the judgment of this Court, exercising its discretion, that the sentences should be run consecutively to each other and the sentences are so run.
>
> *The Court does not exercise its discretion in enhancing the punishment as I feel that the jury verdict under all the circumstances was sufficient and I am not enhancing the punishment.* [emphasis added]

The defendant contends that a convict in service of a sentence has legitimate expectancy of the finality of that punishment— that to enhance the terms on Count I and Count II after the commencement of those sentences, therefore, not only violates the double jeopardy proscription against multiple punishments for the same offense but also the intendments of Missouri statutes.

■ The defendant seeks the effect of the practice in the federal courts that the judge who imposes sentence may not recall the defendant to increase the punishment once the convict begins to serve sentence. That practice rests on the premise [announced in *United States v. Benz*, 282 U.S. 304, 307, 51 S.Ct. 113, 114, 75 L.Ed. 354 (1931)] that to augment sentence once the convict begins service "subjects the defendant to double punishment for the same offense in violation of [the Double Jeopardy Clause]." The *Benz* declaration, however, was gratuitous and only dictum.[5] *United States v. Di Francesco*, 449 U.S. 117, 101 S.Ct. 426, 438, 66 L.Ed.2d 328 (1980).[6] Whatever the historical provenience and effect of the federal practice, a criminal sentence does not have the quality of constitutional finality that attends an acquittal. *Di Francesco*, supra, l.c. 436. Thus, the court may correct without constitutional consequence, a mistake of law and increase a sentence of a defendant imposed inadvertently below the mandatory term. § 557.036.3. *State v. Julin*, 292 Mo. 264, 235 S.W. 818, 820[5] (1921); see also: *Bozza v. United States*, 330 U.S. 160, 166, 67 S.Ct. 645, 648, 91 L.Ed. 818 (1947). Thus, also, on a reconviction after appeal, a trial court may impose an increased sentence—albeit not as a penalty for the appeal. *North Carolina v. Pearce*, 395 U.S. 711, 723, 89 S.Ct. 2072, 2079, 23 L.Ed.2d 656 (1969). That principle applies with equal validity where the sentence is increased by the appeals decision rather than by the trial judgment. *Di Francesco*, supra, l.c. 436–7. No decisive constitutional principle, therefore, impedes

---

5. That practice engendered the anomaly that, where a cause was on appeal, the sentence of a defendant at bail pending the appeal was subject to enhancement, but not that of a defendant who commenced service of term. *United States v. DiLorenzo*, 429 F.2d 216, 221[10] (2d Cir. 1970).

6. Notwithstanding the vehement, albeit, tacit *Di Francesco* repudiation of the *Benz* innovation [that issue was incidental to the question before the Court], New Jersey—as a matter of local jurisprudence—gives effect to the rule that jeopardy attaches once a defendant commences to serve a prison term. *State v. Ryan*, 86 N.J. 1, 429 A.2d 332 (1981).

an enhancement on appeal of a sentence already imposed and in service otherwise enabled by a statute or other rule of law.

In Missouri jurisprudence, the power of a court to assess, decrease or increase a criminal sentence rests on statute, a rule of procedure equivalent to statute, or other rule of law.[7] The power of an appellate court over sentences, whether in the review or original jurisdiction function, also derives from some enactment or other enablement of law. Rules 30.22 and 30.23; *Williford v. Stewart*, 355 Mo. 715, 198 S.W.2d 12 (1946). The sentences on Count I, Count II and Count III were imposed in accordance with the *verdicts of the jury.* That they were made to run consecutively rather than concurrently was an exercise of prerogative under § 558.026 quite apart from dangerous offender § 558.016. The course the prosecution suggests: remand of the cause for reallocation of the consecutive twenty-five year sentences originally imposed over the three convictions for reimposition over Count I and Count II—violates a positive enactment and is unlawful. The sentences returned by the jury verdict on Count I was ten years, on Count II was ten years, and on Count III was five years. The court imposed the full sentences returned by the jury on each count, albeit as consecutive punishments. To reallocate the twenty-five year sentences originally imposed over three convictions for reimposition over two convictions infringes § 557.036, RSMo 1978. A court is not bound to impose the exact punishment returned by the jury verdict and sentence. The law allows certain initiatives,[8] but where the

court imposes sentence under a jury verdict, the term of punishment may not be in excess of that found by the jury:

[§ 557.036.1]:

[U]pon a finding of guilt upon verdict ... the court shall decide the extent of duration of sentence or other disposition to be imposed under all the circumstances ... and render judgment accordingly. [§ 557.036.3]:

\* \* \* \* \* \*

*except that any term of imprisonment imposed cannot exceed the term declared by the jury unless* :

[§ 557.036.3(2) ]:

*[t]he defendant is found to be a persistent or dangerous offender as provided in section 558.016 .* . . . [emphasis added]

To reallocate the sentences returned by the jury and imposed by the court on three convictions over the two convictions on Count I and Count II—as the prosecution suggests—would exceed the term declared by the jury on each count and be unlawful. § 557.036.3. A judgment in excess of the term declared by the jury is possible only if the defendant is found to be a persistent or dangerous offender and sentenced as such. §§ 557.036.3(2) and 558.016.1.

The prosecution argues that the imposition of the jury punishments—but in consecutive order—in lieu of extended terms against the defendant, pronounced a dangerous offender, was formulated on the premise that all three prosecutions were lawful and would stand. Thus, to vacate

---

**7.** See, among others, §§ 557.016, 557.021, 557.026, 557.031, 557.036, 558.016, 558.026, 559.012; Rules 29.03 through 29.09.

**8.** In a criminal conviction, of course, the *court alone* imposes sentence and judgment, whether within the range of jury verdict or on a separate adjudication of dangerous offender. In that sense, every criminal sentence is a sentence of the court. In that sense, also, a jury verdict is always only "advisory." *State v. Blake*, 620 S.W.2d 359, 361[2] (Mo.banc 1981). A court has option to suspend imposition of sentence, with or without probation [§ 557.011.2(3)]; pronounce sentence but suspend ex-

ecution and grant probation [§ 557.011.2(4)]; impose a period of detention as a condition of probation [§ 559.026] or sentence to a fine [§ 560.021]. In no event, however, may a court impose a sentence more severe than that returned by a jury *unless as an adjudicated dangerous offender.*

The law also allows a court to exceed the jury sentence to correct the technical error of a verdict by imposition of a term of imprisonment no greater than the lowest term provided by the offense where "[t]he term declared by the jury is less than the authorized lowest term for the offense . . . ." § 557.036.3(1).

only one sentence upon the invalidation of a single of the multiple convictions, unsettles a plan of punishment deliberately constructed as a fit enhancement against a dangerous offender. Therefore, an order to vacate the sentences as to Count I and Count II and to remand to allow the trial court to reallocate the enhanced punishment over the two counts gives effect to its manifest intention to dispense the more severe punishment due a dangerous offender. That is to say, the trial court will have opportunity to spread the five years over Counts I and II by way of enhancement as he would have done had the court known Count III would not stand.

This appeal, of course, presents for review the *judgment actually entered*, and not an option for judgment. The formulation of a criminal judgment comprises "the plea, the verdict or findings, and the adjudication and sentence." Rule 29.07(c). The formal judgment entered on the convictions discloses that the punishments imposed were the terms returned by the verdicts of the jury, but in consecutive order. The formal judgment does not adjudicate Lewis a dangerous offender, but rather sentences the defendant to a term of years within the statutory prescription returnable by a *jury* for each of the offenses charged, responsive to the instructions of the court. The absence of a recital of dangerous offender adjudication in the formal judgment comports precisely with the oral rendition of judgment and sentence:

> The Court does not exercise its discretion in enhancing the punishment as I

*feel that the jury verdict under all the circumstances was sufficient and I am not enhancing the punishment.* [emphasis added]

The prosecution argument assumes that the defendant was *adjudicated* a dangerous offender, so that even though the sentences were in the guise of jury verdicts, the judgment was nevertheless as to a dangerous offender, and any error in rendition remains subject to correction free from the constraints that affect a jury verdict. That rationale assumes two postulates, both erroneous: the first, that a defendant *found* a dangerous offender amounts to a defendant *adjudged* a dangerous offender within the operation of the criminal statutes; and, the second, that a judgment and sentence may at once be pronounced under the verdict of the jury and under the dangerous offender adjudication of the court.

That a defendant is *found* to be a dangerous offender is only a predicate to the *adjudication by sentence* as a dangerous offender. Thus, the extended term procedures of § 558.021 allow a defendant to be *found* to be a dangerous offender [9] if (1) the defendant is formally charged as a dangerous offender, (2) the evidence allows a finding beyond a reasonable doubt that the defendant is a dangerous offender, (3) the court enters findings of fact which warrant that determination. A defendant *found* to be a dangerous offender under § 558.021 is not *adjudicated* a dangerous offender until and unless the defendant is then *sentenced* as a dangerous offender.[10] That is because

**9.** § 558.021. Extended term procedures.—

1. *The court shall find the defendant to be a* prior offender, persistent offender, or *dangerous offender,* if

(1) The indictment or information, original or amended, or the information in lieu of an indictment pleads all essential facts warranting a finding that the defendant is a prior offender, persistent offender, or dangerous offender; and

(2) Evidence is introduced that establishes sufficient facts pleaded to warrant a finding beyond a reasonable doubt that the defendant is a prior offender, persistent offender, or dangerous offender; and

(3) The court makes findings of fact that warrant a finding beyond a reasonable doubt

by the court that the defendant is a prior offender, persistent offender, or dangerous offender.

**10.** § 558.016. Extended terms for persistent or dangerous offenders—definitions.—

3. A *"dangerous offender"* is one who:

(1) *Is being sentenced* for a felony during the commission of which he knowingly murdered or endangered or threatened the life of another person or knowingly inflicted or attempted or threatened to inflict serious physical injury on another person; and

(2) Has pleaded guilty to or has been found guilty of a class A or B felony or a dangerous felony. [The year 1981 revision reenacts subsection 3 as subsection 4 of the same statute.

[compatibly with the other initiatives given a court in the sentence procedure], the court has discretion not to sentence—that is, *adjudicate*—a defendant as a dangerous offender although he has *found* the defendant punishable as a dangerous offender. "The court *may* sentence" the defendant found as a dangerous offender to the extended term, but does not compel that prerogative. § 558.016.1 [emphasis added]; The New Missouri Criminal Code: A Manual for Court Related Personnel § 3.3 (1978). Thus, a *sentence* as a dangerous offender—as any other criminal judgment—is the essential final and solemn judicial act to culminate a criminal prosecution.[11] In that sense, the sentence is the judgment imposed—the *adjudication McCulley v. State*, 486 S.W.2d 419, 423[4, 5] (Mo.1972); *State v. Jaeger*, 394 S.W.2d 347, 352[8, 9] (Mo. 1965).

The trial court with peremptory decision found that "the jury verdict under all the circumstances was sufficient" and expressly forebore to exercise discretion to sentence the defendant as a dangerous offender.[12] Instead, the court imposed the terms returned by the jury verdicts for consecutive service. In that course, the court was under the constraint of § 557.036 that the "term of imprisonment imposed cannot exceed the term declared by the jury" then, and remains under that constraint now.

It follows also that since adjudication and sentence are both component to a judgment, and since a sentence imposed upon a dangerous offender rests on a statutory authority separate from the procedure which limits a sentence to the term of years a jury verdict could or did return, a judgment under a jury verdict and a judgment as a dangerous offender are not equivalent.

The *adjudication* of dangerous offender does not consummate in a *judgment* of dangerous offender—as the prosecution assumes—until and unless a *sentence* as a dangerous offender is imposed. § 558.016.1 and 3. That sentence was deliberately withheld against the defendant Lewis at the time of allocution and judgment and cannot be refashioned now from a judgment according to the jury verdict, as actually imposed.

Nor can it matter to our decision that the trial judge did not anticipate the reversal and vacation of the judgment and vacation of sentence on Count III, as the prosecution argument intimates. Our determination that robbery second degree encompasses the offense of stealing so that the conviction on one precludes conviction of the other under the recent code introduces no new principle to the criminal law. That robbery is a compounded stealing, a stealing by force, is not an innovation of present § 569.020 [robbery first degree] and § 569.030 [robbery second degree], but was also the character of predecessor robbery sections 560.120 and 560.125, and even before. *State v. Gardner*, 356 Mo. 1015, 204 S.W.2d 716, 720[1, 2] (1947); Missouri Bar Committee Comments on Missouri Improved Criminal Instructions, Robbery p. 2; The New Missouri Criminal Code: A Manual for Court Related Personnel §§ 14.2 and 14.3 (1978). The trial court consciously chose to impose sentences according to the jury verdicts and deliberately forwent the alternative to punish as a dangerous offender. To reallocate three jury sentences as two sentences would be to exceed the jury verdict on each and violate the express limitation of § 557.036.1.

The prosecution cites *United States v. Busic*, 639 F.2d 940 (3rd Cir. 1981) and

The numerical designation we employ was as in effect at the time of the offense charged and the prosecution.]

11. The terms of § 558.021 prescribe a mandatory procedure to charge a defendant as a persistent or dangerous offender, then for evidence separately found beyond a reasonable doubt, then for an adjudication apart from the jury determination of the primary offense—all as due process predicates for the imposition of an extended sentence beyond the term of punishment open to a jury. In short, the dangerous offender adjudication prescribes a separate prosecution to culminate in a separate sentence [judgment]. The New Missouri Criminal Code: A Manual for Court Related Personnel § 3.4 (1978).

12. "The Court does not exercise its discretion in enhancing the punishment as I feel that the jury verdict under all the circumstances was sufficient and I am not enhancing the punishment."

*United States v. Pinto*, 646 F.2d 833, 838 (3rd Cir. 1981) as precedents for the principle that where sentences have been allocated among several interdependent convictions according [at least in *Busic*] to a scheme of enhanced punishment, and one or more of the convictions are vacated, an appellate court may vacate the sentences which remain valid to reallocate—and thus increase—the punishments over the convictions which remain valid. *Busic* and *Pinto*, of course, are under the federal practice where the jury does not assess punishment, so that the sentences are altogether a court function, unrestrained by the term returned by the verdict. Those cases do not bear at all on sentences imposed by a court within constraint of a statute [such as § 557.036.3] that a sentence imposed according to a jury verdict may not exceed the maximum punishment found by the jury.[13]

The judgments on Count I and Count II are affirmed. The judgment on Count III is reversed and the sentence ordered vacated.

All of the judges concur in Part I; WASSERSTROM, J., dissents to Part II in a separate opinion filed; KENNEDY, J., concurs in the separate dissent to Part II by WASSERSTROM, J.

WASSERSTROM, Judge, concurring in part and dissenting in part.

I concur in Part I of the majority opinion. I also concur in that portion of Part II

which holds that no constitutional principle prohibits a remand of this case for resentencing and possible enhancement of the sentence on Counts I and II.[1] However, I cannot agree with the holding by the majority that such a remand is prohibited by the Missouri Penal Code.

The trial court found defendant to be a dangerous offender and he refrained from enhancing defendant's punishment only because he thought the total of 25 years contained in the jury's verdicts constituted a sufficient aggregate punishment. That this was the attitude of the court plainly appears from the following statement during the course of sentencing:

"It is the Court's position that the sentences may be run concurrently or consecutively, and it is the judgment of this Court, exercising its discretion, that the sentences should be run consecutively to each other and the sentences are so run.

"The Court does not exercise its discretion in enhancing the punishment as I feel that the jury verdict under all the circumstances was sufficient and I am not enhancing the punishment."

The Attorney General argues that if the sentence under Count III is now to be vacated, then the trial judge should be given an opportunity to reach the result which he deemed to be just by spreading the same 25 year sentence over the remaining Counts I and II.

**13.** The authority of the *Busic* principle among the several federal judicial circuits is by no means unchallenged. *United States v. Vera*, 615 F.2d 1152 (6th Cir. 1980) and *United States v. Frady*, 607 F.2d 383 (D.C.Cir.1979) hold that upon an appellate court remand for resentence, the double jeopardy clause prohibits the trial court from imposition of a harsher sentence. See also 70 Georgetown L.J. 547, 649 (1981).

The prosecution cites also to support the authority of a trial court upon remand to redistribute among the counts of conviction determined valid the sentence vacated on an invalid count of conviction the case, *Fullman v. State*, 431 A.2d 1260 (Del.Supr.1981). That decision [as the prosecution concedes] rests on a rationale which allows such a reallocation of punishment on remand *only as to a defendant who has not begun service of sentence* and so en-

joys the expectation of finality of sentence double jeopardy will protect [a position defendant here asserts and the prosecution repudiates] and an authority which—at the same time—cites the *Busic* principle which would allow the reallocation, whether or not service of sentence has begun. *Busic*, supra, l.c. 948 n.11.

That ambivalent authority merely records the disarray of judicial opinion on that question before *Di Francesco* was decided, a decision which suggests that the prohibition against enhancement of a punishment on remand has no historical double jeopardy validity, but which question the United States Supreme Court left unsettled.

**1.** That holding by the majority contradicts and nullifies the theory expounded and semi-embraced by Footnote 13 of the majority opinion.

The Attorney General's position is reasonable and appealing. The trial court did find defendant to be a dangerous offender. Under the provisions of Section 558.016, the court could have enhanced the punishment to a total considerably exceeding 25 years. On the other hand, the court also had the authority under Section 557.036 to reduce the aggregate sentence to less than 25 years. The court clearly accepted the 25 year total sentences stated in the verdict because in his judgment that aggregate total was fair and just. It seems obvious that if the trial court had known that five years of that aggregate sentence would not stand because of the reversal of the conviction under Count III, he would have exercised his discretion to spread that five years over Counts I and II by way of enhancement. The trial court should be given that opportunity now unless there is some legal impediment standing in the way. The United States Circuit Court of Appeals for the Third Circuit in *United States v. Busic*, 639 F.2d 940 (1981) and in *United States v. Pinto*, 646 F.2d 833, 838 (1981) under analogous circumstances has held that there is no such impediment. A similar ruling was made in *Davis v. State*, 400 A.2d 292 (Del. 1979); modified in a respect not here controlling, *Hunter v. State*, 420 A.2d 119 (Del. 1980) and *Fullman v. State*, 431 A.2d 1260 (Del.1981).

The majority opinion, however, declares that the Attorney General's proposal for remand "violates a positive enactment and is unlawful." The majority perceives such a statutory prohibition in Section 557.036. I do not.

The general rule of sentencing is stated in Section 557.036.1 and vests the power of imposition in the trial judge. That subsection provides that upon a jury's verdict of guilt, "the court shall decide the extent of duration of sentence or other disposition to be imposed." That general rule is subject to the limitation stated in Section 557.036.3 which says that any term of imprisonment imposed by the judge shall not exceed the term declared by the jury; but that limitation is in turn subject to an exception set forth in Section 557.036.3(2) returning the full power of sentence imposition to the judge where "the defendant is found to be a persistent or dangerous offender as provided in section 558.016."

The defendant in this case was found to be a dangerous offender by the trial judge, as the majority opinion concedes. That finding made Section 557.036.3(2) applicable, thus eliminating the limitation upon the judge's general power to impose sentence.[2] That in my opinion should conclude this inquiry.

However the majority disregards the plain language of Section 557.036.3(2), under which all that is required is a *finding* by the trial judge that the defendant is a dangerous offender, and the majority adds a further requirement of its own that the defendant cannot be considered a "dangerous offender" until he has been so *adjudged and sentenced*. The closest that the majority opinion can come to citing statutory authority for this proposition is its reference to Section 558.016 which defines the term "dangerous offender." That section states that a dangerous offender is one who is being sentenced for a felony during the commission of which he knowingly murdered or endangered or threatened the life of another or knowingly inflicted or attempted or threatened to inflict serious physical injury on another and he has been previously convicted of a dangerous felony. The majority interprets the phrase "[i]s being sentenced for a felony" as meaning that the defendant must be in the course of being sentenced as a dangerous offender. That interpretation is unwarranted. The phrase in question clearly has reference to the underlying felony for which the defendant has just been tried by a jury—in this case, the burglary and the robbery. Section 558.016.4 in no way supports the notion that

---

**2.** Once it is shown that the limitation on the judge's sentencing power has been eliminated, that power becomes equivalent to that of the trial judge under the federal practice, and the attempt by the majority opinion to distinguish *Busic* and *Pinto*, on the basis of difference between federal and state sentencing practice, fails.

a defendant cannot be a dangerous offender until he has been sentenced as such; nor does it support the majority's theory that the trial judge is not free to exceed the jury's recommendation until he has actually done so.

Another theory mentioned in the majority opinion, although not really developed, is that the trial judge in this case would have no power to impose any sentence beyond that recommended by the jury for the reason that the sentence by the trial judge here was "pronounced under the verdict of the jury." However, as already shown, the power of sentencing under Section 557.036.1 is that of the *court*, not the *jury*. This principle which is quite clearly stated in the statute itself is further elucidated in The New Missouri Criminal Code: A Manual for Court Related Personnel (1978), Sec. 2.2, as follows: "Even when the jury makes an initial sentencing assessment, the court must still 'decide the extent or duration of sentence or other disposition to be imposed' ... Thus, the court makes the ultimate decision as to the extent or duration of sentence, even after a jury assessment of an appropriate maximum term of imprisonment ... The code provisions require the court to structure an appropriate disposition in each case whether or not the jury is involved in sentencing." *See also*, Sec. 2.7 and Comments at page 2–11.

The respective roles of court and jury in the sentencing process was recently discussed by the Missouri Supreme Court en banc in *State v. Blake*, 620 S.W.2d 359 (Mo. banc 1981). The opinion in that case refers to the severe limitations upon jury participation in the sentencing process and suggests, as did *State v. Hunter*, 586 S.W.2d 345 (Mo. banc 1979) that, "Perhaps the jury should be informed that its role in sentencing, under some circumstances, is merely advisory." The situation here would qualify as the type of circumstances so mentioned.

The conclusion seems compelled that the sentencing in this case was the act and judgment of the court, not that of the jury. Considering especially, what he stated of record at the time of sentencing, the trial judge obviously considered the sentencing on all counts as interrelated and that all were part of a single package. If one part of that package be subtracted, the whole of the sentencing structure should be voided and the trial court should be permitted to consider resentencing afresh. That was the reasoning in *United States v. Busic, supra*, where the court stated at l.c. 947:

"In the case at bar the defendants contend that they did not appeal their section 111 convictions and the sentences imposed, and the Government did not cross-appeal. However, it is evident that the district court structured its sentence on the erroneous assumption that punishment for the defendants' conduct could be distributed under both section 111 and section 924(c). In fact, the court imposed the heaviest punishment under section 924(c). When the defendants successfully appealed their convictions under section 924(c) and obtained reversals, the court's sentencing plan, based on the aggregate conviction for the criminal assault on the federal officers with firearms, was thwarted. In such a case, where the sentences were interdependent, we believe an appellate court, vacating one of those sentences, can vacate the other sentence even if its imposition is not specifically raised on appeal...."

In my opinion, this case should be remanded to the circuit court for resentencing on Counts I and II and for dismissal of Count III, with the caveat that the aggregate of the sentences under Counts I and II should not exceed 25 years. I respectfully dissent from the ruling by the majority to the contrary.