STATE of Missouri, Respondent,

v.

Ervin WILLIAMS, Appellant.

Ervin WILLIAMS, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 53834, 56015.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 26, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 6, 1990.

Application to Transfer Denied
March 13, 1990.

Dave Hemingway, St. Louis, for appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

GRIMM, Judge.

In this jury-tried case, defendant appeals his convictions of first degree robbery, § 569.020,* a class A felony; first degree burglary, § 569.160, a class B felony; armed criminal action, § 571.015; and stealing, § 570.030, a class C felony. Defendant received concurrent sentences of life, thirty years', thirty years', and fifteen years' imprisonment. Defendant's direct appeal has been consolidated with the appeal from the denial of his post-conviction relief motion. We affirm in part and reverse in part.

Defendant raises five points of error. Three points relate to defendant's direct appeal. First, the trial court erred in denying defendant's *Batson* challenge. We disagree, because we find no abuse of discretion. Second, "[t]he trial court erred in sustaining the State's objection to defense counsel's proper argument that the gun [defendant] allegedly used in the offenses was not readily capable of producing death or serious physical injury on the basis that this misstated the law." We disagree, because defense counsel misstated the law. Third, "[t]he trial court committed plain error in overruling [defendant's] objection to [the prosecutor's] argument that [defendant] was 23 years old...." We disagree, because no manifest injustice resulted.

The remaining two points are related to the denial of defendant's post-conviction relief motions. Fourth, "the motion court clearly erred in failing to render findings or conclusions of law regarding [defendant's] pro se claim of double jeopardy." We disagree, because the issue can be resolved as a matter of law. Fifth, "the motion court clearly erred in denying [defendant's] claim of double jeopardy...." We agree, because the evidence does not show a stealing separate and other than the first degree robbery. Additionally, in a separate brief, defendant contends the trial court erred in finding defendant to be a persistent offender, because § 558.019 as applied to him is an ex post facto law. We disagree, because the record shows defendant was not sentenced under § 558.019.

* All statutory references are to RSMo 1986.

Defendant does not challenge the sufficiency of the evidence. On August 7, 1986, the victim locked the door to his barbershop and sat down to watch television. A man knocked on the door and asked if the shop was open for business. The victim told him the shop was closed.

Moments later, the man returned to the door and looked in. The man walked to the victim's car and broke the antenna. When the victim yelled, the man walked away.

As the victim was walking to his telephone, defendant and the co-defendant lunged through the locked door of the barbershop. Defendant was carrying a "sawed-off" .22 rifle. The co-defendant was carrying what appeared to be a short barrel revolver.

The two men approached the victim and threatened him. Standing on either side of the victim, defendant and the co-defendant took the victim's wallet, car keys, and watch. The co-defendant shoved the victim toward defendant. The victim was hit and then shoved into the back room. The two men closed the door to the back room and barricaded it.

When the victim forced his way out of the back room, he discovered that his television was gone. He looked outside and saw defendant get in on the passenger side of the victim's car. The co-defendant then drove the car away.

Later that day, an informant told two St. Louis Police officers that he overheard two men talking about the robbery. The informant said the two men were armed and had stolen a car. The informant gave the officers an address where the stolen car was parked.

Upon arriving at that address, the officers observed the victim's car parked in a vacant lot. Approximately five minutes later, defendant and the co-defendant approached the victim's car. They were arrested and disarmed. Defendant was carrying a "sawed off" .22 rifle. The co-defendant had a cap pistol which resembled a chrome-plated .38 revolver.

Police officers recovered the victim's television. They found the victim's keys in one of the socks defendant was wearing at the time of his arrest. The victim identified defendant and the co-defendant in a line-up, as the men who had broken into his shop, robbed him, and drove away in his car.

## I

■ In his first point, defendant contends the trial court erred in overruling his objection to the State's use of peremptory strikes against black venirepersons. Defendant's objection was based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Although the State used four of its six peremptory strikes against blacks, defendant's point challenges only two of those strikes.

The *Batson* proceeding in this case was held on August 3, 1987. The proceeding occurred prior to our supreme court's December 15, 1987, opinion in *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987). Therefore, the trial court was not required to give the State the opportunity to explain its strikes before determining whether defendant made a prima facie showing of purposeful discrimination. Nevertheless, the trial court asked the State to explain its strikes.

Defendant contends that the prosecutor's explanation for striking one of the black venirepersons conflicted with that venireperson's answers during voir dire. With respect to the other challenged strike, defendant contends that there was a similarly situated white venireperson who remained on the jury.

The trial court found that twenty of the first twenty-seven venirepersons were black. It was also noted that the final jury panel consisted of ten blacks and two whites. After hearing the prosecutor's explanations and the defendant's response, the trial court specifically found the State's strikes to be "racially neutral."

We give great deference to the trial court's finding. *Batson*, 476 U.S. at 98, n. 21, 106 S.Ct. at 1724, n. 21, 90 L.Ed.2d at 89, n. 21. We have reviewed the voir dire

transcript and conclude that the trial court's findings on this issue are not clearly erroneous. Defendant's first point is denied.

.

## II

■ In his second point, defendant maintains: "The trial court erred in sustaining the State's objection to defense counsel's proper argument that the gun [defendant] allegedly used in the offenses was not readily capable of producing death or serious physical injury on the basis that this misstated the law. Defense counsel sought to apply the State's own proof regarding the poor condition of the gun to press the reasonable doubt as to this necessary element, which counsel properly recited."

The State charged defendant with first degree robbery, § 569.020, involving the use of a "deadly weapon." Defendant was also charged with armed criminal action, § 571.015, based on the use of a "deadly weapon" during the commission of the robbery.

The jury was instructed that "Deadly weapon—means any firearm, loaded or unloaded, or any weapon from which a shot, readily capable of producing death or serious physical injury may be discharged."

During closing arguments, defense counsel stated:

I think when you read it, and I think you need to read it carefully, the definition says that it's any weapon means any firearm loaded or unloaded. Okay, granted, it can be loaded or unloaded, but it has to be readily capable of causing, producing death or serious physical injury if discharged. It has to be a weapon by which something can be shot. Well, I would submit to you that if there is no evidence that there was any ammunition with which to use this weapon then they haven't proven to you that it's a deadly weapon. Okay. It's in the definition. I asked you to look at that. They have to prove that it was a deadly weapon, that it was readily capable of producing death or serious physical injury and

unloaded. I don't think it does. The manner in which allegedly it was used was one strike—

The prosecutor objected, "It's improper. The law clearly provides 'loaded or unloaded.'" The trial court sustained the objection and told defense counsel to proceed.

Defense counsel then resumed her argument:

[DEFENSE COUNSEL]: As I told you, *I told you that it could be loaded or unloaded, but it also continues that it has to be readily capable of producing death or serious physical injury.* Okay. You can read. Please, I am not trying to mislead you, you know. I hope you don't believe I am trying to do that because I am not. Just look at it and look at it carefully, you know. Take the whole sentence into context. It's all part of one. So for that reason I think the State has failed to establish that element which is outlined in the map. The instructions—

[PROSECUTOR]: Your Honor, I am going to object to this argument. She is misstating the law and encouraging the jury not to follow the law, and I would ask that be stricken and the jury be so instructed.

THE COURT: I have already sustained it. There has been a misstatement, but this is a general argument. Go ahead and proceed. You have ended it and you have moved on, I gather, right? Proceed. (emphasis added).

Contrary to defendant's contention, defense counsel did not accurately state the law regarding the definition of "deadly weapon."

Defendant makes no assertion that the weapon he used during the robbery was not a firearm. Rather, he contends on appeal, as did defense counsel in closing argument, that the weapon was not readily capable of producing death or serious physical injury. Defendant misconstrues the definition of "deadly weapon."

Under § 556.061(10):
'Deadly weapon' means any firearm, loaded or unloaded, or any weapon from which a shot, readily capable of producing death or serious physical injury may be discharged, or a switchblade knife, dagger, billy, blackjack or metal knuckles.

The definition, in effect, declares that six categories of weapons are per se capable of producing death or serious physical injury, and, thus, are deadly weapons. They are (1) any firearm, loaded or unloaded; (2) a switchblade knife; (3) a dagger; (4) a billy; (5) a blackjack; and (6) metal knuckles. Any other instrument is a deadly weapon, only if the State proves the instrument is a "weapon from which a shot, readily capable of producing death or serious physical injury[,] may be discharged...." § 556.061(10).

As such, defense counsel misstated the law during closing argument when she said that the State had to prove defendant's gun was readily capable of producing death or serious physical injury. The fact that the gun was a firearm sufficiently classified it as a deadly weapon. Therefore, the trial court did not err in sustaining the prosecutor's objection.

In addition, as noted, the jury instruction defining "deadly weapon" included both the "any firearm" and "any weapon" language of § 566.061(10). The instruction was given pursuant to MAI–CR 3d 333.00. If carefully read, however, MAI–CR 3d 333.00 directs those responsible for preparing instructions to include only those parts of the definition which are applicable to the facts. The general form of MAI–CR 3d 333.00 is:

"The following term(s) used in these instructions (is) (are) defined as follows:

[*Set out the terms and their proper, applicable definition.*]

Further, Notes on Use 3 to MAI–CR 3d 333.00 states, "No definition submitted to a jury should contain portions not applicable to the facts of the particular case." Although the definition given did not prejudice defendant, under the facts of this case, it would have been appropriate to define "deadly weapon" as: "Deadly weapon—means any firearm, loaded or unloaded."

Defendant's second point is denied.

## III

■ In his third point, defendant contends the trial court plainly erred in overruling his objection to the prosecutor's statement that defendant was twenty-three years old. Defendant asserts that "the State's argument injected the prosecutor's own testimony and personal knowledge of matters outside the evidence."

The victim testified he told the police that the robber he later identified as defendant was "twenty or better." A police officer testified that the victim told him the robber was in the age range of twenty to twenty-five years. As defendant correctly points out, however, no evidence was presented of defendant's age.

During closing argument, the prosecutor stated:

Now did [the victim] tell the officer things that certainly fit this man? You better believe it. 20 to 25. This guy is 23—.

Defendant immediately objected, and the trial court overruled the objection. Defendant acknowledges, however, that the objection was not raised in the motion for new trial. Thus, the objection was not preserved for appellate review. *State v. Moesch*, 738 S.W.2d 585, 587 (Mo.App.E.D. 1987).

We have, nevertheless, reviewed the point for plain error. Rule 29.12(b). Absent evidence at trial of defendant's actual age, the prosecutor's statement during closing argument was improper. We conclude, however, that no manifest injustice resulted from the trial court's failure to sustain defendant's objection. The evidence of defendant's guilt was overwhelming. We also note that defendant was present during the trial. Thus, the jury had the opportunity to determine if defendant fit the description given by the victim. Point denied.

## Post Conviction Issues
## IV

■ In his fourth point, defendant contends "the motion court clearly erred in failing to render findings or conclusions of law regarding [defendant's] pro se claim of double jeopardy."

The double jeopardy issue can be resolved as a matter of law. *Guyton v. State*, 752 S.W.2d 390, 392 (Mo.App.E.D. 1988). "[W]here the issue confronting the motion court is one of law and not of fact, findings of fact are not required." *Id.*

Further, we can determine the correctness of the motion court's action from the record before us. Thus, it is unnecessary to remand for findings and conclusions. *Id.* Point denied.

## V

■ Defendant asserts in point five that "the motion court clearly erred in denying [defendant's] claim of double jeopardy...." He contends that his conviction for stealing should be reversed. Defendant maintains that the stealing of the victim's car "constituted a single larceny in the course of the robbery ..., where the robbers took the keys at gunpoint from [the victim] and left in the car after barricading [the victim] in the store room." Defendant sufficiently raised this issue in his pro se post-conviction relief motion.

In Count I, the State charged defendant with first degree robbery. In Count IV, the State charged defendant with stealing the victim's automobile.

Defendant relies primarily on *State v. Lewis*, 633 S.W.2d 110 (Mo.App.W.D.1982). Lewis and a co-defendant broke into the victim's home, bound her, forcibly stole her car keys and numerous other items. They then fled in the victim's car. Lewis was convicted of stealing and second degree robbery.

The *Lewis* court reversed the stealing conviction. Referring to §§ 556.041 and 556.046, the *Lewis* court concluded that "as a matter of statutory policy, the state authority may prosecute and convict a person for multiple offenses from the same conduct, except that a conviction may not be returned on both an inclusive offense and the included offense, but only on either." *Lewis*, 633 S.W.2d at 114 (citing Comments, The New Missouri Criminal Code: A Man-

ual for Court Related Personnel, § 1.9 (1978)).

The *Lewis* court found that stealing is a lesser included offense of second degree robbery. *Lewis*, 633 S.W.2d at 114. It held that Lewis' stealing conviction could not stand, because the evidence did "not show a stealing separate and other than a stealing by force—that is, by a robbery second degree." *Id.* at 116.

Applying the *Lewis* analysis, it is clear that stealing is also a lesser included offense of first degree robbery. *See Lewis*, 633 S.W.2d at 114; Robbery in the Second Degree—Included and Related Offenses, The New Missouri Criminal Code: A Manual for Court Related Personnel, § 14.3 (1978).

*Lewis* is indistinguishable from the present case. Here, as in *Lewis*, the keys were taken from the victim at the same time as other items. The evidence here did not show a stealing separate and other than the forcible stealing (i.e., first degree robbery). Accordingly, defendant's stealing conviction is reversed. *Lewis*, 633 S.W.2d at 116; *cf. State v. Johnson*, 672 S.W.2d 158, 160 (Mo.App.E.D.1984) (Evidence showed a separate stealing. The vehicle was stolen "after all violence had ceased, using keys actually in the vehicle and not under the control of the victim. The caption of the vehicle was not the product of the violence used to secure the other property.")

### Separately Briefed Issue

In a separate brief, defendant raises one additional point: "The trial court erred by finding [defendant] a persistent offender because section 558.019 as applied to him is an ex post facto law...."

Defendant was charged by substitute information in lieu of indictment as a class X offender, § 558.019. Defendant's motion to dismiss this substitute information, however, was sustained.

It is clear from the record that defendant was not sentenced as a class X offender under § 558.019. Rather, defendant was properly sentenced as a prior and persist-

ent offender under § 558.016. Point denied.

### Conclusion

We reverse defendant's conviction and sentence for stealing. Defendant's remaining convictions and sentences are affirmed.

SATZ, P.J., and SMITH, J., concur.