STATE of Missouri, ex rel. Theodore WHITE, Jr., Relator,

v.

The Honorable Jon GRAY, Respondent.

No. WD 64085.

Missouri Court of Appeals, Western District.

Aug. 24, 2004.

Phillip R. Gibson, Kansas City, for relator.

Cheryl Caponegro Nield, Asst. Atty. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., HOLLIGER and HARDWICK, JJ.

ORIGINAL PROCEEDING
IN MANDAMUS

PATRICIA BRECKENRIDGE, Judge.

Relator Theodore White, Jr., filed a petition for writ of mandamus on April 27, 2004, seeking to compel the Honorable Jon R. Gray, Family Court Administrative Judge for Jackson County, to order that court records of the adoptions of J.L. and D.S. be disclosed to Mr. White. Mr. White seeks to utilize the records in his defense of the criminal charges pending against him in the Circuit Court of Jackson County, Case No. CR1998–02401. Judge Gray denied Mr. White's request for disclosure of the adoption records because he found that section 453.121, RSMo 2000,[1] prohibited the disclosure. Although he felt compelled to deny the request for disclosure, Judge Gray, nevertheless, found that "[t]he Court's review of the material sought leads the Court to likewise conclude that such information is or may be relevant to [Mr. White's] defense in the criminal case and that [Mr. White's] constitutional rights may compel disclosure in response to compulsory process."

In his petition to this court, Mr. White argues that the information contained in the adoption records is "directly relevant to" and "essential to" his defense. On May 10, 2004, this court issued its preliminary writ ordering Judge Gray to immediately disclose relevant portions of the adoption file or file an answer before this court as to why he should not take such action. He chose to file an answer. Following oral argument on May 20, 2004, an order was issued making the preliminary writ absolute and ordering Judge Gray to transfer the requested adoption records to

---

1. All statutory references are to the Revised Statutes of Missouri 2000 unless otherwise noted.

Judge Atwell, the circuit judge presiding over Mr. White's criminal trial, for an *in camera* review, to determine whether information in the record should be disclosed to Mr. White because it is relevant and material to Mr. White's defense to the charges for which he is presently on trial. This opinion sets out the legal basis for the ordered disclosure.

### Factual and Procedural Background

The facts relevant to this proceeding, taken as true, are drawn from Mr. White's "Petition for Writ of Mandamus With Suggestions In Support Thereof." *McCarney v. Nearing, Staats, Prelogar & Jones*, 866 S.W.2d 881, 886 (Mo.App.1993). In December 1991, Mr. White married Tina McKenna.[2] Ms. McKenna had two children from a previous marriage, J.L. and D.S. Sometime in 1995, Mr. White filed a petition to adopt J.L. and D.S. Ms. McKenna fully supported the petition, and the children's biological father voluntarily terminated his parental rights. A guardian ad litem was appointed for the children, who interviewed the children both together and separately about Mr. White and the adoption. In addition, prior to the adoption, the Division of Family Services (DFS) performed a home study and psychological testing. DFS and the guardian ad litem both filed written reports with the court and may have testified as to their findings and recommendations. Following the court's own inquiry of Mr. White, Ms. McKenna, and the children, the Juvenile Division of the Circuit Court of Jackson County approved Mr. White's petition for adoption of the children on January 25, 1996.

On March 21, 1998, J.L. told Ms. McKenna that Mr. White had been touching her inappropriately. Following Ms. McKenna's report of the incidents to the Lee's Summit Police Department, an investigation was undertaken, which eventually led to Mr. White being charged with multiple counts of sexual abuse of J.L. The incidents were alleged to have occurred during the summer of 1995 through March 8, 1998. Therefore, some of the incidents of which J.L. complained allegedly occurred prior to Mr. White's adoption petition being granted. Following a February 1999 trial, Mr. White was convicted and subsequently sentenced to prison. When Mr. White appealed, this court reversed his conviction because the prosecution failed to disclose that Ms. McKenna and Richard McKinley, the lead detective for the sex crimes unit for the Lee's Summit Police Department and lead detective on Mr. White's case, had been engaged in a sexual relationship for nearly a year before the trial. *State v. White*, 81 S.W.3d 561, 568–70 (Mo.App.2002). Evidence of the relationship would have served to impeach the police work and Ms. McKenna's testimony, and the failure to disclose the information deprived Mr. White of a fair trial. *Id.* at 570. Mr. White's case was remanded to the Jackson County Circuit Court for a retrial.

In preparation for this retrial, Mr. White requested that the juvenile court disclose to him the adoption records of J.L. and D.S., because he believed that the records contain information relevant to his defense or are likely to lead to the discovery of admissible evidence.[3] The matter was referred to Judge Gray. On April 16, 2004, following review of the records,

---

**2.** Ms. McKenna is now known as Tina McKinley.

**3.** At one time, Mr. White had copies of the adoption records. When he and Ms. McKenna separated, however, Ms. McKenna retained the records and will not provide a copy to Mr. White. Mr. White's attorney in the adoption does not have a copy of the records.

Judge Gray denied Mr. White's request, finding that section 453.121 prohibited disclosure. Even though he felt compelled to deny the request, Judge Gray found that the records contain information that "is or may be relevant to [Mr. White's] defense in the criminal case and that [Mr. White's] constitutional rights may compel disclosure in response to compulsory process."

On April 27, 2004, Mr. White sought relief from this court by filing a petition for a writ of mandamus. Respondent filed suggestions in opposition to Mr. White's petition. This court granted a preliminary order in mandamus. Oral argument was held on May 20, 2004, and, on that same day, this court entered its order making the preliminary writ of mandamus absolute, with this opinion to follow.

## Analysis

■ "A writ of prohibition [or] mandamus is the proper remedy for curing discovery rulings that exceed a court's jurisdiction or constitute an abuse of the court's discretion." *State ex rel. Atchison, Topeka & Santa Fe R.R. v. O'Malley,* 888 S.W.2d 760, 761 (Mo.App.1994). "Prohibition lies to prevent the forced disclosure of information during discovery, particularly when the information is protected by a statute, rule or privilege." *Id.* Mandamus lies to require the disclosure of information during discovery when the information is relevant to the lawsuit or reasonably calculated to lead to the discovery of admissible evidence. *State ex rel. Rowland v. O'Toole,* 884 S.W.2d 100, 102 (Mo.App. 1994).

Mr. White argues that because the adoption records at issue in this case may contain information relevant to his criminal case, he is entitled to such discovery and a writ of mandamus is, therefore, proper. Specifically, he alleges that he has a constitutional right to present witnesses and evidence in defense of the charges he faces, and relevant information for that purpose may be contained in the adoption records. Respondent argues that disclosure of adoption records is prohibited by section 453.120, except in limited situations authorized by the statutes, and that Mr. White's request does not fit within the limited disclosure exception contained in section 453.121.[4]

In asserting a right to disclosure, Mr. White does not contend that section 453.121 is unconstitutional. Instead, he argues that his constitutional rights to present a defense to the charges against him outweigh the state's interest in the privacy of the adoption records, as codified by section 453.120. In particular, Mr. White claims that any compelling interest the state may have in maintaining the privacy of adoption records, in general, simply does not exist in this case, because it is a step-parent adoption in which all of the identifying information is known to all of the parties and the biological father is now deceased. He relies on *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), in support of his claim that the denial of the disclosure of the adoption records in this case is unconstitutional. In *Davis,* the trial judge prohibited defense counsel from questioning a witness about the witness's juvenile criminal record based on a state statute that made the

---

**4.** Respondent further argues that disclosure of the records in this case is inappropriate under this court's prior decision in *State v. Raines,* 118 S.W.3d 205 (Mo.App.2003). *Raines* is inapplicable to this case, however, because *Raines* specifically concerned the de-

fendant's rights, under the Confrontation Clause, to cross-examine the victim about her past allegedly false allegations of rape. *Id.* at 212. The case did not involve the question at issue, here, which is the defendant's right to pretrial discovery of privileged information.

information presumptively confidential. 415 U.S. at 311, 94 S.Ct. at 1108. The United States Supreme Court found that such a restriction on the defendant's ability to cross-examine witnesses violated the Confrontation Clause, despite the state's legitimate interest in protecting the identity of juvenile offenders. *Id.* at 318–19, 94 S.Ct. at 1111–12.

■■■ Mr. White's reliance on *Davis* is misplaced. The Confrontation Clause is implicated only when there is "a specific statutory or court-imposed restriction at trial on the scope of questioning." *Pennsylvania v. Ritchie*, 480 U.S. 39, 54, 107 S.Ct. 989, 999, 94 L.Ed.2d 40 (1987). "The right to confront is satisfied if defense counsel receives wide latitude at trial to cross-examine witnesses; it does not include a right to pretrial disclosure of any and all information that might assist cross-examination." *State v. Parker*, 886 S.W.2d 908, 916 (Mo. banc 1994). Because Mr. White's claim is "only for pretrial disclosure of potentially helpful information" and "he does not assert that the trial court limited cross-examination," the Confrontation Clause is not implicated. *Id. Davis* is, therefore, inapplicable.

A United States Supreme Court case that concerns pretrial discovery of privileged information is *Ritchie*. In *Ritchie*, the defendant was charged with sexual crimes against his daughter. 480 U.S. at 43, 107 S.Ct. at 994. In the course of preparing his defense, the defendant served the Pennsylvania Children and Youth Services (CYS), which had investigated the allegations, with a subpoena requesting access to the agency's file on his daughter's case. *Id.* CYS denied the defendant and his attorney access to the file because the records were privileged by reason of a Pennsylvania statute that made the records confidential, subject to certain specific exceptions.[5] *Id.* One such statutory exception permitted CYS to disclose the confidential reports to a court of competent jurisdiction pursuant to court order. *Id.* at 44, 107 S.Ct. at 994. The trial court agreed with the agency and denied disclosure. *Id.* Subsequently, the case proceeded to trial and the defendant was convicted of the charges. *Id.* at 45, 107 S.Ct. at 995.

The United States Supreme Court found that the defendant's claim was properly evaluated under the Due Process Clause of the Fourteenth Amendment. *Id.* at 56, 107 S.Ct. at 1001. Under its due process analysis, the Court first noted the "well[-]settled" rule "that the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Id.* at 57, 107 S.Ct. at 1001. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* (citations omitted). The Court also recognized the strong public interest in protecting the confidentiality of the CYS file. *Id.*

The Court considered these competing interests and determined that, because the statute creating the privilege was "qualified," in that it permitted disclosure under court order in judiciary proceedings, the Court could not conclude that the statute prevented "all disclosure in criminal prosecutions." *Id.* at 57–58, 107 S.Ct. at 1001. Thus, the Court determined that the defendant's interest in obtaining a fair trial and the commonwealth's interest in preserving the confidentiality of the CYS file could "be protected fully by requiring that the CYS files be submitted only to the trial

5.  Pa. Stat. Ann., Title 11, section 2215(a)(5)   (Purdon Supp.1986).

court for *in camera* review." *Id.* at 60, 107 S.Ct. at 1002–03. The Court cautioned, however, that the defendant's right to an *in camera* review of privileged records is not automatic. Rather, the defendant must establish a basis for his claim that the records contain material evidence. *Id.* at 58, 107 S.Ct. at 1002 n. 15. Missouri courts have consistently applied the procedure set forth in *Ritchie* to cases involving access to statutorily-privileged government records.[6]

The Court in *Ritchie* left unresolved the question whether the result in that case would have been different if the statute at issue was not qualified and, instead, had protected the state agency records "from disclosure to *anyone*, including law-enforcement and judicial personnel." 480 U.S. at 57, 107 S.Ct. at 1001 n. 14. The statute at issue in this case, section 453.120.1, provides that "[t]he files and records of the court in adoption proceedings shall not be open to inspection or copy by any person or persons, except upon an order of the court expressly permitting the same issued in accordance with the provisions of section 453.121." Subsection 2 of section 453.121 similarly states that "[a]ll papers, records, and information pertaining to an adoption whether part of any permanent record or file may be disclosed only in accordance with this section." The remaining subsections of section 453.121 outline the procedures by which a person can request disclosure of adoption records.

Thus, section 453.121 contemplates circumstances when disclosure of adoption records to some identifiable parties is permissible. For example, upon written request, subsection 3 allows for disclosure of nonidentifying information to either the adoptive parents, legal guardians, or adopted adult. Section 453.121.3. Similarly, subsections 7, 8, and 9 contemplate disclosure of identifying information contained in adoption records to an adopted adult, if the appropriate notice provisions contained in section 453.121 are followed. Section 453.121.7–.9.

Section 453.121 does not expressly contemplate disclosure of adoption records for use in judicial proceedings, however.[7] As such, section 453.121 does not create a

---

**6.** *See, e.g., State ex rel. King v. Sheffield,* 901 S.W.2d 343, 346–47 (Mo.App.1995); *State ex rel. Fusselman v. Belt,* 893 S.W.2d 898, 900–01 (Mo.App.1995); *State v. Davison,* 884 S.W.2d 701, 703–04 (Mo.App.1994); *State ex rel. St. Louis County v. Block,* 622 S.W.2d 367, 368–69 (Mo.App.1981).

**7.** In 1986, the Missouri Legislature amended section 453.120 and enacted section 453.121. Before the 1986 amendment, section 453.120 stated, "The files and records of the court in adoption proceedings shall not be open to inspection, or copy, by any person or persons, *except upon an order of the court expressly permitting the same and pursuant to written application.*" (emphasis added). The Missouri Supreme Court in *Application of Maples,* 563 S.W.2d 760, 765 (Mo. banc 1978), found the statute constitutional, but determined that it "presupposes in a proper case that information should be released from the adoption records." In particular, the Court in *Maples* held:

> The court *on good cause shown may release* such portions of an adoption proceeding record as it deems necessary to satisfy the needs of the applicant when measured against the rights of the natural parents, the adoptive parents and the societal need to protect and maintain a viable system for adoption. The closing of such records by statute, manifests a legislative intent that any opening or disclosure be with caution. The burden is applicant's to show good cause, and only a proper showing and within the guidelines hereinafter discussed may information be made available therefrom. The disclosure of some information does not require the record be thrown open, instead, only so much information as the court adjudges necessary for the good cause shown need be disclosed.

563 S.W.2d at 765–66 (emphasis added).

qualified privilege like the statute addressed by the Supreme Court in *Ritchie*. *See People v. Stanaway*, 446 Mich. 643, 521 N.W.2d 557, 569–70 (1994). That section 453.121 does not create a qualified privilege for adoption records does not necessarily foreclose their disclosure under the procedure set forth in *Ritchie*, however, if the due process rights of the defendant require such disclosure. *See Stanaway*, 521 N.W.2d at 570.

The issue of whether *Ritchie* applies to privileged records where the privilege is not qualified has subsequently been addressed by many lower courts, as discussed by the Michigan Supreme Court in *Stanaway*. The two defendants in *Stanaway*, a consolidated case, were both charged with criminal sexual conduct. *Id.* at 562–64. Each sought access to several privileged records concerning his alleged victim, including the records of a psychologist, a sexual assault counselor, a social worker, and a juvenile diversion officer. *Id.* at 561. In both cases, the prosecutors argued that the requested records were privileged under various Michigan statutes. *Id.* at 564–65. None of the statutes created "the qualified privilege the United States Supreme Court addressed in *Ritchie*," that is, none specifically permitted disclosure in judicial proceedings. *Id.* at 569–70.

In discussing the nature of privilege statutes, the court noted that "[u]nlike other evidentiary rules that exclude evidence because it is potentially unreliable, privilege statutes shield potentially reliable evidence in an attempt to foster relationships." *Id.* at 565. Moreover, "[w]hile the assurance of confidentiality may encourage relationships of trust, privileges inhibit rather than facilitate the search for the truth." *Id.* The court then undertook an extensive review of how other jurisdictions balanced a defendant's constitutional right to a fair trial with a state's interest in maintaining the confidentiality of privileged records. *Id.* at 570–75. In doing so, the court observed that "[c]ommon-law and statutory privileges may have to be narrowed or yielded if those privileges interfere with certain constitutional rights of defendants." *Id.* at 570. In the majority of cases discussed, the courts adopted the procedure set forth in *Ritchie*, that is, once the defendant makes "a preliminary showing that the privileged information is likely to contain evidence useful to his defense, ... the privilege must yield to the defendant's constitutional rights," and the trial court must conduct an *in camera* inspection of the privileged records. *Id.* at 571–72.

The court in *Stanaway* considered that the general purposes of the statutory privileges at issue in its case were "to prevent the routine disclosures that would undermine therapeutic relationships." *Id.* at 575. The court recognized the defendants' premise, though, which was "that if relevant evidence is shielded by privilege for some purpose other than enhancing the truth-seeking function of a trial, then the danger of convicting an innocent defendant increases." *Id.* at 567. Thus, the court concluded that, "in *certain* circumstances[,] an *in camera* review of the records is necessary so as not to undermine confidence in the outcome of the trial." *Id.* at 575 (second emphasis added). To balance the interest of the legislature "in protecting the confidentiality of the therapeutic setting with the possibility that there may be exculpatory evidence in such records necessary to prevent the conviction of an innocent person," the court in *Stanaway* adopted a procedure similar to that set forth in *Ritchie*:

> [W]here a defendant can establish a reasonable probability that the privileged records are likely to contain material information necessary to his defense, an in camera review of those records must be conducted to ascertain whether they

contain evidence that is reasonably necessary, and therefore essential, to the defense. Only when the trial court finds such evidence, should it be provided to the defendant.

*Id.* at 562.

■ This court agrees with the reasoning of *Stanaway.* To hold the statutory privilege superior to Mr. White's right to obtain potentially exculpatory evidence would be unconstitutional. *Id.* at 573–75. Because a court has already determined that the adoption records sought by Mr. White may contain evidence relevant to Mr. White's defense, denying Mr. White access to such evidence would violate his right to due process. *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963) (holding that suppression of evidence by the prosecution of evidence favorable to the defendant upon request violates the defendant's right to due process where the evidence is material). "An *in camera* review by the trial court will serve [Mr. White]'s interest without destroying the [state]'s need to protect the confidentiality" of adoption records. *Ritchie,* 480 U.S. at 61, 107 S.Ct. at 1003.

### Conclusion

For these reasons, this court ordered The Honorable Charles Atwell to conduct an *in camera* review of the adoption records to determine what information, if any, in the record should be disclosed to Mr. White because it is relevant and material to Mr. White's defense of the crimes for which he is charged.

The preliminary writ of mandamus is made absolute.

All concur.