

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

STATE OF MISSOURI,      )     No. ED100555

         Respondent,      )     Appeal from the Franklin
                                         )     County Circuit Court

vs.                                   )     No. 11AB-CR01288-01

BRAD J. JULIUS,           )

                                           )     Honorable John B. Berkemeyer

         Defendant/Appellant.      )

## ORDER

The Opinion issued on October 7, 2014 is hereby withdrawn. Respondent's motion for rehearing and application for transfer are denied as moot. New opinion to issue.

SO ORDERED.

Date: _Nov. 18, 2014_             _Sherri B. Sullivan_
                                         Sherri B. Sullivan, Presiding Judge
                                         Division II
                                         Missouri Court of Appeals Eastern District

cc:      Frank K. Carlson
          Sarah K. Tupper
          Blake R. Fischer
          Andrew C. Hooper



# In the Missouri Court of Appeals
# Eastern District

**DIVISION TWO**

STATE OF MISSOURI,　　　　　　　　　)　　　No. ED100555
　　　　　　　　　　　　　　　　　　　)
　　　Respondent,　　　　　　　　　　)　　　Appeal from the Franklin
　　　　　　　　　　　　　　　　　　　)　　　County Circuit Court
vs.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　　Honorable John B. Berkemeyer
BRAD J. JULIUS,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　　Filed:　November 18, 2014
　　　Defendant/Appellant.　　　　　　)

## Introduction

Brad Julius (Defendant) appeals from his judgment of conviction of sexual assault. On appeal, Defendant raises seven points, alleging that the trial court unduly restricted pre-trial discovery, committed four separate instructional errors, and erroneously declined to admonish the jury and grant a mistrial after the prosecutor misstated the law during closing argument. Defendant additionally claims that these errors had a prejudicial cumulative effect. We affirm.

## Factual Background

In April 2011, Victim went on a date with a former boyfriend (friend), where they shared a bottle of wine. Afterward, the victim and her friend went to a bar in Union, Missouri, sharing a partial bottle of wine on the way. At the bar, Victim visited with her friend and he bought her another glass of wine. Victim then went to visit Defendant and his friend, Matt Rogers, who

were also at the bar, during which time Victim continued to drink alcohol, consuming two or three "jack and Cokes." Victim told Defendant that she and her friend were just friends and that she did not want an intimate relationship with him. Defendant told Victim that it "look[ed]" like Victim's friend "want[ed] more" and Defendant asked for her phone number so that he could call and "check on" Victim later. After declining a ride from Defendant and Rogers, Victim returned to her home with her friend, where they opened another bottle of wine and talked.

During that time, Victim received several texts from Defendant, to which she replied that she was "fine" and did not need Defendant and Rogers to come over. Rogers then called Victim and asked whether he and Defendant could come over for some beers. Rogers indicated that if he and Defendant came over, Victim's friend would leave. Victim did not want her friend to spend the night, so she told Defendant and Rogers that they could come over. Victim's friend then left her house.

When Defendant and Rogers arrived, the three drank more wine and each had a shot of hard alcohol. After that, Victim was only able to remember "bits and pieces" of the night and felt like her body was "shutting down." Victim recalled going to the living room to listen to music and dance and then leaving to go lay down. As she walked into the kitchen, Defendant grabbed her upper body and told her that he and Rogers were "going to run a train on [her]." Defendant guided, and "kind of carried," Victim toward her bedroom where Defendant then had sexual intercourse with Victim. At the time, Victim could not move or talk. After Defendant and Rogers left, Victim lost consciousness. Several weeks later, Victim reported what had happened to the police. Defendant was arrested and charged with one count of sexual assault.

Before trial, Defendant conducted a deposition of Victim, during which Victim refused to disclose her ex-husband's phone number and her victim impact statement. Defendant recessed

2

the deposition to a later date. Defendant then filed a motion for sanctions for Victim's failure to answer questions during her deposition. Defendant also filed a notice to take the depositions of Victim's medical and psychological providers, Doctors Christy Bleckman and Timothy Jones respectively, and filed subpoenas for Victim's medical and psychiatric records. Victim moved to quash Defendant's request for discovery and for the subpoenas. The trial court granted Victim's motion to quash and denied Defendant's motion for sanctions.

Defendant then moved for reconsideration of the trial court's order sustaining Victim's motion to quash and denying Defendant's motion for sanctions. In his supporting memorandum, Defendant asserted that Victim had waived the physician-patient privilege as to Drs. Bleckman and Jones and that no *in camera* review of the requested records was necessary.[1] Defendant further asserted that denial of access to the records would deprive him of his rights to a fair trial, to present a defense, and to confront witnesses against him. The information contained in the records, according to Defendant—including, Victim's contradictory out-of-court statements regarding the crime, false claims of prior rapes, her inability to recall the crime because of her use of psychiatric medications—was necessary to impeach Victim's credibility. The trial court, in denying Defendant's motion for reconsideration, did not conduct an *in camera* review of the records, but apparently considered the records privileged by indicating that it would weigh Defendant's need for the information against Victim's interest in keeping the records private. Ultimately, the trial court's order permitted further deposition of Victim limited to the events on the night in question, but permitted Defendant to "continue discovery (including deposition and

---

[1] Contrary to Victim's assertion in her motion to quash that the records were protected by the physician-patient privilege, Defendant's motion for reconsideration alleged that Victim provided waivers of all privileges as to the records of Drs. Bleckman and Jones. However, the record on appeal contains one authorization to release medical records as to Dr. Bleckman and not Dr. Jones. Defendant also asserted in his supporting memorandum that Victim waived the privilege by putting her medical condition in issue by making allegations regarding her "mental capacity to consent to sex with Defendant" and how her physical condition impacted her ability to consent.

3

records)" if Victim had sought professional medical, psychiatric or psychological treatment for conditions related to the crime since the date of the assault. The order prohibited discovery of medical, psychiatric or psychological conditions before the date of the crime unless the "medical, psychiatric or psychological professional" found the information "necessarily related" to the instant crime.

Ultimately, the jury convicted Defendant of sexual assault. The trial court sentenced Defendant to five years' imprisonment in the Department of Corrections. The trial court suspended execution of the sentence and Defendant was placed on probation for five years. This appeal followed.

### Point I: Pre-Trial Discovery

In his first point, Defendant claims that the trial court abused its discretion by sustaining Victim's motion to quash Defendant's subpoena of Victim's medical and psychiatric records, overruling Defendant's motion for sanctions for Victim's failure to answer questions during her deposition, and denying Defendant's motion for reconsideration of these same issues and limiting the reconvened deposition of Victim to the events on the date of the crime. According to Defendant, the trial court's actions in this regard deprived Defendant of his rights to present a defense, to confront the witnesses against him, to due process of law, and to a fair trial.[2] While Defendant's initial brief does not elucidate what information was contained within the records of which he was deprived that would have assisted him in preparing a defense—and, thus, does not

---

[2] Defendant's point relied on alleges potential claims of error regarding three different decisions of the trial court. Points that contain multifarious claims of errors run afoul of Rule 84.04(d)(1)(A). Defendant's point relied on also violates Rule 84.04(d)(1)(C) because it does not explain, in the context of the particular facts of this case, why the trial court's decisions were erroneous. The statement that the trial court's decisions violated his constitutional rights is a legal conclusion. "Insufficient points relied on preserve nothing for this court to review" and are subject to dismissal. *Hardin v. State*, 51 S.W.3d 129, 130-31 (Mo. App. W.D. 2001) (citation and quotations omitted).

explain how the trial court's allegedly erroneous decisions prejudiced Defendant—Defendant's reply brief cures these deficiencies.[3] We, therefore, review this point *ex gratia*.

In particular, Defendant's reply brief explains that Victim's psychiatric records would have shown that Victim saw Dr. Jones for counseling related to the event and that Victim's crime victim compensation records would have revealed that Victim had a pecuniary motive to obtain payment for her pre-existing psychiatric disorders and a remodel of a home. Victim's medical records, according to Defendant, would have shown that: (1) at the time of the crime, Victim was prescribed heavy psychoactive medications; (2) Victim had been treated for serious psychiatric disorders, including bi-polar disorder; (3) Victim had previously claimed in 2006 or 2007, and again in 2010, that she had been date-raped; and, (4) Victim had possibly been given a date-rape drug on the night at issue.[4] Defendant claims that because he was not permitted discovery of these records, nor was he permitted to depose Victim as to the matters therein, that Defendant was deprived of the opportunity to cross-examine Victim as to her testimonial

---

[3] Defendant's initial brief summarizes the law and summarily concludes that Defendant was deprived of his ability to impeach Victim on cross-examination, that the trial court erred by quashing the subpoena, and that Defendant was thereby deprived of his constitutional rights. Because Defendant's point is defective and because Defendant's initial brief offers only conclusory arguments that are not connected to facts on the record, we would be within our discretion to consider this point abandoned. *State v. Edwards*, 280 S.W.3d 184, 190 (Mo. App. E.D. 2009) (a point is abandoned if a party fails to offer argument beyond mere conclusions).

[4] At oral argument, Defendant's counsel shifted the focus of this point relied on by arguing that Defendant should have been allowed to depose Victim's treating physician, Dr. Bleckman, regarding the effect that a date rape drug would have had on Victim's behavior. Notwithstanding that this claim of error is not raised in the point relied on, Defendant's claim that the trial court unduly limited pre-trial discovery with respect to the possible use of a date rape drug is waived because, at trial, defense counsel specifically asked that this evidence be excluded. Before trial, defense counsel indicated his expectation that the trial court would not permit the State to introduce any evidence of Victim's medical or mental incapacitation based on the trial court's prior discovery order. Defense counsel stated:

> [Victim] had made a statement that her counselor's or doctors . . . speculated to her that she may have been drugged.
>
> And I would ask that that be excluded. There is no drug evidence, there's no drug testing. . . . . .
>
> I would ask that that not be brought up. *It's just speculation.* There's no evidence to support it. [Emphasis added.]

5

incapacity, her prior inconsistent statements of the alleged events, her pattern and practice of false accusations of rape, her motive to fabricate, her absence of then-present memory, and her drug use at the time of the crime.[5]  The State responds by arguing that no abuse of discretion occurred because the requested information was neither material nor favorable to Defendant and Defendant was not prejudiced as a result.

"Claims that a trial court denied meaningful discovery are reviewed under the abuse of discretion standard."  *State v. Hawkins*, 328 S.W.3d 799, 808 (Mo. App. S.D. 2010).  "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration."  *State v. Taylor*, 134 S.W.3d 21, 26 (Mo. banc 2004) (quotations omitted).  It cannot be said that the trial court abused its discretion if reasonable persons can differ as to the propriety of the trial court's action.  *Id*.  Further, when considering a claim that a defendant was denied meaningful discovery, this Court will determine whether the trial court abused its discretion "in such a way as to result in fundamental unfairness."  *State v. Artis*, 215 S.W.3d 327, 337 (Mo. App. S.D. 2007) (citation omitted).  "Fundamental unfairness occurs when the state's failure to disclose results in defendant's genuine surprise and the surprise prevents meaningful efforts to consider and prepare a strategy for addressing the evidence."  *Id*.

In the context of a pre-trial discovery dispute, like the instant case, a trial court is required to balance the State's interest in preserving the confidentiality of records that may contain privileged information, such as medical and psychiatric records, with a defendant's right to a fair trial.  *See Hawkins*, 328 S.W.3d at 808-09.  A defendant's due process rights, as well as his rights to confront witnesses and to present a defense are not, however, absolute.  *See, e.g., State ex rel.*

---

[5] Defendant does not provide any argument regarding why the denial of his motion for sanctions was erroneous. We, therefore, deem this claim of error articulated in the point relied on to be abandoned.  *Edwards*, 280 S.W.3d at 190 (citation and quotations omitted).

*White v. Gray*, 141 S.W.3d 460, 464 (Mo. App. W.D. 2004). When a defendant seeks potentially privileged information, the proper procedure for protecting confidentiality and the defendant's due process rights is for the trial court to conduct an *in camera* review to determine whether the records are actually privileged and, if so, whether, under the circumstances of the case, the asserted privilege should yield to the defendant's specific need for the evidence. *Artis*, 215 S.W.3d at 337; *State v. Stewart*, 18 S.W.3d 75, 94 (Mo. App. E.D. 2000).

Notably, Defendant in the trial court proceedings expressly asserted that no *in camera* review was necessary, and that the material was discoverable, because Victim had waived the physician-patient privilege.[6] Regardless of whether Victim waived the privilege, "a defendant is not entitled to information on the *mere possibility* that it might be helpful, but must make some plausible showing [, which is supported by a factual predicate,] how the information would have been material and favorable." *Taylor*, 134 S.W.3d at 26-7 (quotations and footnote omitted) (emphasis added). Put another way, a defendant must allege specific facts showing how the information is both favorable and material. *State v. Davis*, 186 S.W.3d 367, 372 (Mo. App. W.D. 2005). "'Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.'" *Gray*, 141 S.W.3d at 464 (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987)). "The policy behind the rule is to make sure that the 'quest for [the privileged information] is not merely a desperate grasping at a straw.'" *Davis*, 186 S.W.3d at 372 (quoting *State ex rel. St. Louis County, Mo. v. Block*, 622 S.W.2d 367, 372 (Mo. App. E.D. 1981)). Further, material that is not

---

[6] Defendant requests an *in camera* review for the first time in his reply brief. Defendant cannot request an *in camera* review for the first time on appeal. *See Stewart*, 18 S.W.3d at 94. This Court will not convict the trial court of error for failure to conduct that review when Defendant argued before the trial court that no *in camera* review was necessary.

privileged may be obtained through discovery if it is relevant to the subject matter in the action. *State ex rel. Wilfong v. Schaeperkoetter*, 933 S.W.2d 407, 410 (Mo. banc 1996). "Evidence that is relevant includes that which is reasonably calculated to lead to the discovery of admissible evidence." *Davis*, 186 S.W.3d at 372.

Applying these standards, this Court has upheld the denial of discovery where a defendant merely alleged that it was possible that the victim's counseling records contained impeachment evidence, reasoning that the defendant was not entitled to the records on the mere possibility that the information might be helpful to his case. *State v. Seiter*, 949 S.W.2d 218, 220-21 (Mo. App. E.D. 1997). Similarly, this Court upheld the denial of discovery where a defendant made a general assertion that victim's hospital records would contain evidence that the victim used drugs at the time of crime that would be useful to impeach victim, because the defendant did not present specific facts to establish what information was in the requested records that would be favorable to him. *State v. Goodwin*, 65 S.W.3d 17, 21 (Mo. App. E.D. 2001). Comparatively, this Court concluded that the trial court erred in denying an *in camera* review of the victim's psychological records where a defendant established that the records were both relevant and material because the defendant alleged specific facts showing that victim told counselors inconsistent dates as to when the abuse occurred. *Davis*, 186 S.W.3d at 372-73.

### A. Psychiatric Records

Defendant first alleges that Victim's psychiatric records would be material and favorable to him because they would reveal prior inconsistent statements as to the events on the night in question. Defendant does not allege "specific facts" in support, but conclusorily states that these records would be relevant to impeach Victim's credibility. *See Goodwin*, 65 S.W.3d at 21. Indeed, neither before this Court nor before the trial court has Defendant alleged any facts

regarding what Victim's prior inconsistent statements may have been. *See id*.; *compare Davis*, 186 S.W.3d at 372-73. That Victim saw Dr. Jones for counseling related to psychological symptoms she suffered after the crime reflects only a generalized claim that the records might contain relevant information. *See Seiter*, 949 S.W.2d at 220-21. Because Defendant has raised only a mere possibility that Victim's psychiatric records were relevant and material to his defense, Defendant has failed to demonstrate a reasonable probability that the results of the proceedings would have been different. *See Gray*, 141 S.W.3d at 464. We cannot conclude that the trial court's decision to deny Defendant's motion for reconsideration in this regard was an abuse of discretion.

### B. Crime Victim Compensation Records

Defendant also alleges that he should have been allowed to depose Victim regarding her alleged pecuniary motive to obtain payment from the crime victim's compensation fund for her pre-existing psychiatric conditions and remodel of a home. Defendant, however, does not allege specific facts to establish Victim's pecuniary motive or explain how such an inquiry was relevant or material to his defense such that the result of the proceedings would have been different had he been permitted to question Victim as to these matters. In any case, we note that evidence that a victim received payment from the crime victims' compensation fund is inadmissible, *see* § 595.075 RSMo,[7] and Defendant cites no authority that this evidentiary rule must yield to a defendant's alleged need for the information when the defendant has not established that the information was either relevant or material to the defense. Moreover, Defendant never argued before the trial court that he should be permitted to explore Victim's pecuniary motive based on the content of her crime victim compensation records. This Court will not convict a trial court of

---

[7] All statutory references are to RSMo 2000, unless otherwise indicated.

error on an issue that was never before the trial court to decide. *VanBooven v. Smull*, 938 S.W.2d 324, 330 (Mo. App. W.D. 1997).

## C. Medical Records

Finally, Defendant claims that the trial court erred by not ordering disclosure of Victim's medical records, which would have shown Victim's history of psychiatric disorders and treatment through prescription of "psychoactive" medications, as well as claims of prior sexual assaults and statements to her treating physician regarding the instant sexual assault. Defendant has only established a "mere possibility" that this type of evidence would be relevant and material to his defense. *See Seiter*, 949 S.W.2d at 220-21. Defendant alleges no specific facts that Victim's psychiatric disorders or use of related drugs for treatment affected her truth and veracity, or limited her ability to recall events on the night in question. *See Goodwin*, 65 S.W.3d at 21. Defendant makes no factually supported allegation that Victim ever recanted her prior allegations of rape, as to make those allegations relevant to Victim's credibility. *Compare Davis*, 186 S.W.3d at 372-73. And, Defendant makes no specific factual allegation that Victim's statements to her treating physician regarding the instant assault were inconsistent with her trial testimony. *Compare id*. Because Defendant failed to present specific facts indicating that the medical records would have been relevant, material, and favorable to him, we cannot conclude that the trial court abused its discretion by not granting Defendant access to these records.

In sum, Defendant has failed to establish that any of the records he sought were relevant, material, or favorable to him such that he was erroneously deprived of meaningful discovery. Further, we highlight that the trial court's order denying Defendant's motion for reconsideration expressly permitted Defendant to engage in further discovery as to Victim's medical, psychiatric, or psychological conditions if Victim had sought professional treatment for such conditions

10

related to, and after the date of, the crime. Our review of the record reveals that Defendant, despite his knowledge that Victim had received medical treatment and counseling after the crime for conditions related to the crime, took absolutely no action after entry of the trial court's order to subpoena Victim's medical, psychiatric, or psychological providers or to obtain copies of their records. Defendant provides no explanation why he failed to pursue discovery of material that the trial court's order specifically permitted him to pursue and that Defendant now asserts he was wrongfully denied. While Defendant's inaction does not necessarily amount to waiver of this point relied on, we are disinclined to convict the trial court of error when its order permitted Defendant the relief he sought and the complained of error resulted, not from any action of the trial court, but from Defendant's own inaction. Point I denied.

**Points II, III, IV, and V: Instructional Error**

Defendant's second, third, fourth, and fifth points raise claims of instructional error related to the verdict director, Instruction No. 5, and its converse instruction, Instruction No. 6. We review preserved claims of instructional error de novo, evaluating whether the instruction was supported by the evidence and the law. *State v. Richie*, 376 S.W.3d 58, 64 (Mo. App. E.D. 2012). "To reverse on grounds of instructional error, the party challenging the instruction must show that the offending instruction misdirected, misled or confused the jury, and prejudice resulted." *Id*. Reversal is required only if the error resulted in prejudice that materially affected the merits of the action. *See State v. Tisius*, 362 S.W.3d 398, 412 (Mo. banc 2012). To the extent any of Defendant's claims of instructional error are not preserved, we may review those claims for plain error. *State v. Mangum*, 390 S.W.3d 853, 860-61 (Mo. App. E.D. 2013).

11

At the instruction conference, the State offered Instruction No. 5, the verdict director, which was modeled on MAI-CR 3d 320.07. The trial court submitted the State's Instruction No. 5 to the jury, which stated:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about April 24, 2011, in the County of Franklin, State of Missouri, the defendant had sexual intercourse with [Victim], and

Second, that defendant did so without the consent of [Victim], and

Third, that defendant was aware that he did not have the consent of [Victim], then you will find the defendant guilty of sexual assault.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "sexual intercourse" means any penetration, however slight, of the female sex organ by the male sex organ, whether or not an emission results.

As used in this instruction, consent or lack of consent may be expressed or implied. Assent does not constitute consent if:

(a) It is given by a person who lacks the mental capacity to authorize the conduct charged to constitute the offense and such mental incapacity is manifest or known to the actor; or

(b) It is given by a person who by reason of youth, mental disease or defect, or intoxication, is manifestly unable or known by the actor to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct charged to constitute the offense; or

(c) It is induced by force, duress, or deception.

The converse of the verdict director is Instruction No. 6, patterned on MAI-CR 3d 308.02, which Defendant proffered. The State did not object and the trial court submitted Defendant's Instruction No. 6 to the jury, as follows:

If you have a reasonable doubt as to whether

First, the defendant had sexual intercourse with [Victim] without her consent, or

Second, that defendant knew that he did not have the consent of [Victim], you must find the defendant not guilty of sexual assault as submitted in Instruction No. 5.

*Point II: Instruction No. 5's Use of the Phrase "Was Aware"*

In his second point relied on, Defendant claims the trial court committed reversible error by submitting Instruction No. 5 to the jury because the instruction improperly used the phrase "was aware" that Defendant did not have the consent of Victim, as opposed to "Defendant knew" he did not have consent of Victim, since both the indictment and substantive law use the term "knew" in defining the crime of sexual assault. According to Defendant, the jury was misled, misdirected, or confused by the use of the phrase "was aware" because MAI-CR 3d does not provide a definition of the term "aware," and the converse Instruction No. 6 used the term "knew." The State responds that the trial court did not err by submitting Instruction No. 5 to the jury because the instruction complies with MAI-CR 3d 320.07 and does not conflict with substantive law.

If there is an applicable MAI, then Rule 28.02(c) requires that the MAI instruction be used to the exclusion of any other instruction. If a jury instruction does not conform to an applicable MAI, then prejudice to the defendant is presumed unless it is clearly established that no prejudice has occurred. *State v. Pennell*, 399 S.W.3d 81, 92 (Mo. App. E.D. 2013). Further, "MAI instructions are presumed to be valid," *Tisius*, 362 S.W.3d at 412, but if a particular MAI does not accurately state the substantive law, then it should not be submitted to the jury, *Hervey v. Missouri Dept. of Corr.*, 379 S.W.3d 156, 159 (Mo. banc 2012).

13

Here, the applicable MAI, MAI-CR 3d 320.07, provides in pertinent part, "Third, that defendant (knew) (or) (was aware) that he did not have the consent of [*name of victim*] . . . ." Instruction No. 5 followed this language verbatim. In this regard, the trial court elected to use the phrase "was aware" as opposed to "knew," over Defendant's objection that the phrase "was aware" did not conform to the indictment and would mislead the jury. Having compared Instruction No. 5 with the applicable MAI, the trial court, in submitting Instruction No. 5 to the jury, clearly conformed to MAI-CR 3d 320.07.

While an instruction based on the MAI-CR is presumed valid, Defendant claims that Instruction No. 5 did not conform to the substantive language of the crime charged—because the instruction used the phrase "was aware"—and, therefore, should not have been submitted to the jury.[8] Notably, Defendant did not raise this specific objection at trial. Instead, Defendant objected on the ground that it would be "more proper" to replace the phrase "was aware" as used in the State's proposed instruction, with the word "knowing, as it more closely tracks the indictment." Because Defendant did not assert that Instruction No. 5 conflicted with substantive law at trial and first raised this argument in his motion for a new trial, this argument is not preserved for our review. *See* Rule 28.03 (no error can be alleged in the giving of an instruction unless the party makes a distinct objection including the grounds for the objection and raises the same objection in a motion for new trial). Accordingly, our review of Point II is only for plain error. *See State v. Spry*, 252 S.W.3d 261, 266 (Mo. App. S.D. 2008).

"In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict." *State v. White*, 421 S.W.3d 560, 563-64 (Mo.

---

[8] The argument portion of Defendant's brief under this point relied on focuses exclusively on Instruction No. 5's non-conformance with substantive law. Defendant's argument as it relates to the indictment is, thus, abandoned. *See Edwards*, 280 S.W.3d at 190.

14

App. E.D. 2014) (citation and quotations omitted). Plain error review contemplates a two-step process. *Spry*, 252 S.W.3d at 266. First, we consider whether there was a plain error, *i.e.*, an evident, obvious error affecting the defendant's substantial rights. *State v. Ralston*, 400 S.W.3d 511, 520-21 (Mo. App. S.D. 2013). If we find plain error, then the second step is to determine whether the error actually resulted in manifest injustice or a miscarriage of justice. *Id*. at 521.

The source of the substantive law in this case is § 566.040.[9] That statute provided, "A person commits the crime of sexual assault if he has sexual intercourse with another person *knowing* that he does so without that person's consent." (Emphasis added). Defendant relies solely on this section's use of the term "knowing" in arguing that Instruction No. 5's use of the phrase "was aware" conflicts with substantive law. While § 566.040 uses the term "knowing," Defendant overlooks the preliminary provisions of Missouri's Criminal Code applicable to § 566.040, which define "knowledge" as articulated in § 562.016. That section provides, "A person 'acts knowingly', or with knowledge . . . when he is *aware* of the nature of his conduct . . . or . . . when he is *aware* that his conduct is practically certain to cause that result." (Emphasis added). Because the code defines "knowledge" to be synonymous with a defendant's awareness of his conduct, it cannot be said that Instruction No. 5 conflicts with substantive law. Under these circumstances, where the instruction was patterned after the MAI and the MAI is consistent with substantive law, Defendant has failed to demonstrate that the alleged instructional error affected the jury's verdict. Accordingly, we see no error, plain, or otherwise. Point II denied.

*Point III: Proffered Instruction Defining "Knew"*

In his third point relied on, Defendant claims that the trial court erred by declining to submit Defendant's proffered instruction defining "knew" consistent with its definition in MAI-

---

[9] Effective August 2013, the Legislature renumbered § 566.040 as § 566.031 Supp. 2013, which criminalizes the same conduct and uses substantially the same language.

CR 3d 333.00. Defendant explains that the word "knew" was properly used in the converse instruction, and absent a definition of that term, given that Instruction No. 5 did not use the term "knew," the jury was misled, misdirected, or confused. The State responds that Instruction No. 5 already included the definition of "knew" and that, even if the trial court erred, Defendant has not established prejudice.

At the instruction conference, Defendant objected to Instruction No. 5's inclusion of the definitions of "consent" and "sexual intercourse," and instead proffered a separate instruction defining those terms as well as an instruction defining the term "knowledge" as contained in the definitions listed in MAI-CR 3d 333.00. With respect to providing a definition of the term "knowledge," the trial court found that the verdict director does not use the words "know or knowingly" and implicitly concluded that no definition needed to be provided. Defendant raised the same claim in his motion for new trial and, therefore, this claim is preserved for our review.

As the trial court correctly noted in its ruling, Instruction No. 5 did not include the term "knew," obviating the necessity for a separate instruction providing that definition. Moreover, the general form for providing definitions as articulated in MAI-CR 3d 333.00, Note on Use 2(F), provides that a definition of a term shall not be given unless the particular MAI-CR's Notes on Use either requires or permits a definition. Here, MAI-CR 3d 320.7, Note on Use 2, on which Instruction No. 5 is patterned, neither requires nor permits inclusion of the definition of "knew."

Notwithstanding this prohibition against providing the definition of "knew," Defendant claims that the trial court's failure to provide the definition of "knew" misled the jury because the converse Instruction No. 6 used the term "knew." However, given that the terms "knew" and "aware" are essentially synonymous, we fail to see how a reasonable jury, giving those terms their common and generally understood meaning, could have been misled. Indeed, Defendant

16

does not explain how any supposed difference between the two terms could have led to jury confusion and, ultimately, have materially affected the merits of the action.[10]  Points III denied.

*Point IV: Proffered Instruction Defining "Consent"*

In his fourth point, Defendant asserts that the trial court erred by declining to submit a separate instruction providing the definition of the word "consent."  Defendant claims that a separate instruction should have been given because: (1) "consent" was also an element of the converse Instruction No. 6; (2) the general form for providing definitions as articulated in MAI-CR 333.00, Note on Use 5, mandates that a separate instruction be given when a word appears in more than one instruction; and (3) the term "consent" appeared in both Instruction Nos. 5 and 6 causing the jury to be misled, misdirected, or confused.  The State responds that the trial court did not err by including the definition of consent at the end of Instruction No. 5, given that Instruction No. 5 conformed to the MAI pattern instruction.

At the instruction conference, Defendant objected to Instruction No. 5's inclusion of the definition "consent or lack of consent."  Instead, Defendant offered an instruction containing the definition of "consent" as contained in the definitions provided in MAI-CR 3d 333.00.  The trial court overruled Defendant's objection, noting that the definition of "consent" was properly contained at the end of Instruction No. 5.  Defendant raised this issue again in his motion for new trial and it is, thus, preserved for our review.  *See* Rule 28.03.

---

[10] Notably, Defendant submitted the converse Instruction No. 6, patterned on MAI-CR 3d 308.02, containing the language "defendant *knew* that he did not have the consent of [Victim]." (Emphasis added).  The Notes on Use for MAI-CR 3d 308.02 indicate that this instruction may be given only upon a defendant's request and states, "This instruction enables a defendant to select from a verdict director the element or elements that he wishes to emphasize."  In drafting Instruction No. 6, Defendant elected to diverge from the "was aware" language used in the verdict director and instead use the word "knew."  Consequently, Defendant created the error of which he now complains and is not entitled to any relief even assuming *arguendo* that the trial court erred by declining to submit an instruction containing the definition of "knew."  *See State v. Bolden*, 371 S.W.3d 802, 806 (Mo. banc 2012) (a defendant waives appellate review if the alleged error is "self-invited").

Note on Use 2 of MAI-CR 3d 320.07, on which Instruction No. 5 was patterned, provides that the term "consent" "may be defined by the court on its own motion and must be defined upon written request in proper form by the state or by the defendant[.]" Here, the State proffered Instruction No. 5 containing the definition of "consent," which the trial court ultimately accepted over Defendant's objection. Having reviewed the Notes on Use for MAI-CR 3d 320.07, it is clear that the definition of "consent" was properly included in Instruction No. 5 because the State requested that it be provided to the jury. Generally, "an instruction which complies with the applicable MAI-CR will not be deemed error" and is presumed valid. *State v. Jones*, 921 S.W.2d 154, 155 (Mo. App. E.D. 1996); *Tisius*, 362 S.W.3d at 412.

Defendant, however, contends that the general form for providing definitions as articulated in MAI-CR 3d 333.00 requires that the definition of "consent" be given in a separate instruction because the term was used in more than one instruction (Instruction Nos. 5 and 6). Defendant cites MAI-CR 3d 333.00, Note on Use 5, which states:

> The Court is given discretion as to how to submit the definitions to the jury. *If a term is used in only one instruction, the definition of that term may be added at the bottom of that instruction, or may be submitted to the jury as a separate instruction.* [Emphasis added, to indicate language Defendant relies on.]

Even assuming *arguendo*, that the trial court erred by not providing the definition of "consent" in a separate instruction, Defendant has not established prejudice. Defendant simply concludes that the lack of a separate instruction misled, misdirected, and confused the jury because both Instruction Nos. 5 and 6 contained that word, but Defendant does not explain how confusion resulted. *See Edwards*, 280 S.W.3d at 190 (conclusory arguments are deemed abandoned). Given that the definition of consent was provided at the end of Instruction No. 5 and immediately before Instruction No. 6, which also used the word "consent" and referenced

the jury to Instruction No. 5, we fail to see how the jury could have become confused by the placement of the definition of "consent." Point IV denied.

*Point V: Instruction No. 5's Definition of "Consent"*

In his fifth point relied on, Defendant claims that the trial court erred in submitting Instruction No. 5 to the jury because the definition of "consent" contained portions of the definition not applicable to the facts of this case in violation of the general form for providing definitions articulated in MAI-CR 3d 333.00, Note on Use 3. Defendant claims that as a result, the jury was misled, misdirected, or confused. The State responds that the trial court did not err by submitting the full definition of consent at the end of Instruction No. 5 because the full definition did not relieve the State of its burden of proof and Defendant did not suffer prejudice.

At the instruction conference, Defendant objected to Instruction No. 5 and offered in lieu thereof, a separate definition of "consent" consistent with the definition provided in MAI-CR 3d 333.00, which did not include subparagraph (a), regarding mental incapacity, and subparagraph (c), regarding force, duress, or coercion. Defense counsel posited that subparagraphs (a) and (c) are inapplicable to the facts of the case because there was no evidence to support a finding thereunder. Defendant raised the same objection in his motion for new trial. This claim is, thus, preserved for our review. *See* Rule 28.03.

The general form for providing definitions articulated in MAI-CR 3d 333.00, Note on Use 3, provides, "No definition submitted to a jury should contain portions not applicable to the facts of the particular case." Recall that Instruction No. 5 included the full definition of "consent," including subparagraphs (a) and (c), which state respectively, "Assent does not constitute consent if: (a) It is given by a person who lacks the mental capacity to authorize the conduct charged to constitute the offense and such mental incapacity is manifest of known to the

19

actor; . . . or (c) It is induced by force, duress, or deception." Plainly, the facts of this case do not indicate that Victim lacked mental capacity or that Defendant induced Victim's consent by force, duress, or deception. Thus, the trial court clearly erred by including the full definition of consent in contravention of MAI-CR 3d 333.00, Note on Use 3.

Defendant, however, has not established that the offending instruction misled, misdirected, or confused the jury, or that this error materially affected the outcome of the trial. *Richie*, 376 S.W.3d at 64. When instructional error occurs, prejudice is judicially determined by considering the facts and instruction together. *State v. Brown*, 958 S.W.2d 574, 581 (Mo. App. W.D. 1997). Here, the facts in no way indicate, or even reasonably imply, that Victim lacked mental capacity to give consent or that Defendant obtained consent through force, duress or coercion. The only evidence produced at trial pertaining to consent related to Victim's consumption of alcohol and her subsequent intoxication. It follows that, although the jury was permitted to consider mental incapacity and the use of force, coercion, and duress in their determination of guilt, that a reasonable jury would not have convicted Defendant upon a determination that Victim did not consent due to lack of mental capacity or the use of force, duress, or coercion. The evidence simply did not implicate either scenario and any indication of juror confusion is absent from the record. *See State v. Williams*, 784 S.W.2d 276, 277-79 (Mo. App. E.D. 1989) (inclusion of inapplicable definition of "deadly weapon," *i.e.*, "*any weapon from which a shot, readily capable of producing death . . . may be discharged*," did not cause prejudice where evidence showed that the defendant carried a "sawed off" .22 rifle). In short, the jury could not, under the facts of this case, have drawn a reasonable inference from the evidence presented at trial that would allow it to convict Defendant upon the erroneously provided instruction.

20

The lack of prejudice to Defendant is further underscored by the State's theory of the case and closing argument, which focused entirely on Victim's intoxication and specifically drew the jury's attention to subparagraph (b) of the definition of "consent" to the exclusion of the subparagraphs (a) and (c). The State emphasized Instruction No. 5 in its closing argument, stating:

> Now this instruction says as used in this instruction consent or lack of consent may be expressed or implied. I have no problem with that. Assent does not constitute consent if [under] Paragraph B it is given by a person who by reason of mute [sic], not here, mental disease or defect, not here, or intoxication, is manifestly unable or known by the actor . . . .

*     *     *

> [Defendant] knew she was intoxicated. [Defendant] knew she couldn't consent. [Defendant] didn't care whether she could consent or not.

*     *     *

[Defendant] got her drunk, he knew she was drunk and he had sex with her.

Given the foregoing, we fail to see how the jury could have convicted Defendant based on the erroneously admitted portions of the term "consent." The State did not premise its argument on a theory of the case not embodied by the evidence in an attempt to avoid or lessen its burden of proof.

While Defendant has not demonstrated, how under the particular facts of this case, he suffered prejudice, Defendant analogizes the present matter to *State v. Perry*, 35 S.W.3d 397, 399 (Mo. App. E.D. 2000), where this Court concluded that the inclusion of an inapplicable definitional instruction prejudiced the defendant. In *Perry*, the defendant was arrested after police saw him throw away a cigarette box containing marijuana and heroin while returning to his vehicle. *Id*. at 397. After arresting the defendant, officers approached the passenger in the defendant's vehicle, who had a marijuana cigarette behind his ear. *Id*. At trial, the defendant did

21

not testify and the passenger testified that the marijuana and heroin in the cigarette box belonged to him. *Id.* at 398. The verdict director for possession of heroin erroneously included the definition of "joint possession," even though the evidence at trial only supported that either the defendant or his passenger solely possessed the contraband. *Id.* This Court concluded that, under the facts of the case, the instructional error confused the jury because it could have convicted the defendant based on a theory of joint possession, *i.e.*, that he either knew about the drugs or shared them with the passenger. *Id.* at 399. The Court also highlighted the fact that the prosecutor relied on a joint possession theory in closing argument, which lessened the State's burden of proof. *Id.*

*Perry* is readily distinguishable from the instant case. The factual circumstances of this case do not present the same opportunity for confusion as the facts in *Perry*. In *Perry*, two individuals may have been involved in criminal activity at the same time, and although the evidence did not support joint possession, the definition of "joint possession" could have reasonably confused the jury given that two actors were involved. The same type of circumstance is not involved here. As noted, the only evidence presented pertaining to "consent" related to Victim's intoxication. As in *Williams*, 784 S.W.2d at 278-79, the inclusion of an irrelevant definition that has absolutely no relation to the evidence in the case, did not prejudice Defendant. Moreover, unlike the prosecutor in *Perry*, who in closing argument specifically relied on the erroneously admitted portion of the instruction, the prosecutor in this case exclusively focused on Victim's intoxication. *Compare Perry*, 35 S.W.3d at 399. Defendant has not demonstrated prejudice. Point IV denied.

**Point VI:  Misstatement of Law During Closing Argument**

In his sixth point relied on, Defendant claims that the trial court erred by overruling his objection to admonish the jury and related motion for a mistrial when the State misstated the law during closing argument.  Specifically, Defendant alleges that the State incorrectly named Victim, instead of Defendant, as the "actor" when it referred to the definition of "consent" and that the trial court did "nothing" to cure the defect leading to juror confusion.[11]  The State responds that the trial court properly admonished the jury and that the error did not require granting a mistrial.

Because Defendant objected to the State's misstatement of law at trial and raised the same objections in his motion for new trial, this point is preserved for our review.  Preserved claims of error during closing argument are reviewed for an abuse of discretion.  In reviewing a trial court's ruling on an objection to closing argument, we examine the closing argument at issue in the context of the entire record.  *State v. Edwards*, 116 S.W.3d 511, 537 (Mo. banc 2003).  "The trial court has broad discretion in controlling closing argument, with wide latitude accorded counsel in their summation." *State v. Dudley*, 51 S.W.3d 44, 57 (Mo. App. W.D. 2001) (citation and quotations omitted).  However, when a proper objection is made, a trial court should exclude statements that misrepresent the evidence or law or that confuse the jury. *State v. Barton*, 936 S.W.2d 781, 783 (Mo. banc 1996).  A trial court's decision concerning the scope of closing argument is cause for reversal only upon a showing of an abuse of discretion that resulted in prejudice to the defendant.  *State v. Deck*, 136 S.W.3d 481, 488 (Mo. banc 2004).  In other

---

[11] Defendant's point relied on is defective because it addresses more than one claim of alleged trial court error, *i.e.*, failing to admonish the jury and denying his motion for mistrial.  *See* Rule 84.04(d).  Because it does not appear from the argument portion of Defendant's brief that Defendant addresses the trial court's decision on Defendant's motion for mistrial, we limit our consideration of this point to the trial court's ruling on Defendant's objection during closing argument. *See Edwards*, 280 S.W.3d at 190.

words, there must be a reasonable probability that the verdict would have been different. *State v. Williams*, 24 S.W.3d 101, 124 (Mo. App. W.D. 2000).

On appeal, the State does not dispute that it misstated the law during closing argument. During the State's argument, the following colloquy occurred:

> [THE PROSECUTOR]: Now this instruction says as used in this instruction consent or lack of consent may be expressed or implied. I have no problem with that. Assent does not constitute consent if [under] Paragraph B it is given by a person who by reason of mute [sic], not here, mental disease or defect, not here, or intoxication, is manifestly unable or known by **the actor by [Victim]**—

> [DEFENSE COUNSEL]: Objection, Your Honor, that is not what the [instruction] refers to.

> \*     \*     \*

> [DEFENSE COUNSEL]: That is a flat misstatement of the law. . . . . He is claiming to this jury that the word actor in that instruction refers to the complainant. It does not. It refers to the accused.

> [THE COURT]: I agree with that, [prosecutor].

> [THE PROSECUTOR]: All right. I'll withdraw it.

> [THE COURT]: Okay. Thank you.

> [DEFENSE COUNSEL]: The jury needs to be instructed that that's a misstatement of the law because they've been told something completely different.

> [THE COURT]: I will instruct the jury. . . . . The jury is admonished to disregard the last statement of closing argument by [the prosecutor]. The law in this case is given to you in the instructions. And you will have the instructions to go to your room with you to read. [Emphasis added, to indicate misstatement of law.]

Certainly, "[m]isstatements of the law are impermissible during closing arguments and a duty rests upon the court to restrain such arguments." *State v. Johnson*, 182 S.W.3d 667, 670 (Mo. App. E.D. 2005). Once defense counsel objected to the prosecutor's misstatement, the trial court properly admonished the jury to disregard the last statement of the closing argument *by the*

*prosecutor* and reminded the jury that the law in this case is provided in the instructions. Jurors are presumed to follow the instructions given. *State v. Johnson*, 284 S.W.3d 561, 574 (Mo. banc 2009).

In an apparent attempt to avoid this presumption, Defendant mischaracterizes the trial court's admonishment as telling the jury to disregard *defense counsel's objection*. The record clearly refutes this assertion. Defendant otherwise cites nothing in the record indicating that the jury did not follow the trial court's curative instruction or the instructions containing the correct applicable law. Accordingly, Defendant has failed to establish that the trial court abused its discretion by refusing to admonish the jury a second time or that Defendant's verdict would have been different in the absence of the prosecutor's misstatement. Point VI denied.

### Point VII: Cumulative Error

In his final point relied on, Defendant claims that the cumulative effect of the errors in points II through VI prejudiced Defendant and entitle him to a new trial. Defendant has only established that a single non-prejudicial error occurred, with respect to the inclusion of the full definition of "consent" as discussed in Point V. Because none of Defendant's previous points amount to reversible error, and only a single non-prejudicial error exists, "there can be no reversible error attributable to their cumulative effect." *State v. Gray*, 887 S.W.2d 369, 390 (Mo. banc 1994). "Numerous non-errors cannot add up to error." *State v. Hunter*, 840 S.W.2d 850, 869-70 (Mo. banc 1992). Point VII denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
Philip M. Hess, Judge

Sherri B. Sullivan, P.J. and
Mary K. Hoff, J. concur.